Mr. Justice DANIEL
 

 delivered the, opinion of the court.
 

 This was an action of ejectment, instituted by the plaintiff, a citizen'of Indiana, and as sole heiress of John Crow, deceased, against James Lawson, a citizen of the State of Arkansas,’ for the recovery of a .tract of land situated in the State last mentioned, described in the declaration, and averred to be of greater value than two thousand dollars. Pending the proceedings in the Circuit Court, Lawson, the original defendant, having died, the cause was revived against the defendants upon the record as his heirs, and upon a trial of the cause, on the 16th day of April, 1856,.the jury rendered á verdict for the plaintiff, and on that verdict the court gave a judgment in favor of the plaintiff, with costs of suit. At a subsequent day of the term, the court, on motion of the defendants, awarded a new trial in their behalf; and on the 22d day of April, 1857, this cause being again heard, a verdict was rendered in favor of the defendants, below, the defendants in error, and upon this verdict the court pronounced judgment in behalf of tfie defendants, inclusive of all the costs of suit.
 

 In'this action the defendant pleaded six several pleas: first, the general issue not guilty, on which there was a joinder; and five other pleas, all of which were either stricken out or over
 
 *334
 
 ruled upon demurrer, except the fifth, to the following effect: that the defendant was á purchaser of the tract of land in the. declaration. mentioned, at a sale made by the sheriff and collector of the revenue of the .county in which the said land was and is situated, for the non-payment of the taxes assessed and due thereon, and that he has held the peaceable, adverse, and uninterrupted possession of the said land under and by virtue of his said purchase for more than five years next before the commencement of this suit. On this fifth plea, also, issue was joined.
 

 Upon .the trial in the court below, the .plaintiff gave in evidence a patent from-'the United States, bearing date on the 1st day of February,-1821, to the-plaintiff and others, heirs of John Crow, deceased, for the land in contest, which patent was read without objection, tbe titles of both plaintiff and defendants being deducible from that act of the Government. The plaintiff further proved that' she was the only surviving child and the sole heir of-John Crow, 'and was the widow of James Thomas, who died in the year 1840; and .that from the year 1839 she had resided in the State of Indiana, and was a citizen of that State. .-The-plaintiff further proved the possession of Lawson, the ancestor of the- defendants, of the land at the time of the institution of this' suit, and his refusal to "surrender possession to the plaintiff. And here the plaintiff rested her case upon the evidence.
 

 The defendants, in support of their title and right of possession, -offered, in evidence a deed, bearing date on. the. 2d day of November, 1846, from
 
 ~W.
 
 B. Borden, at that- date sheriff, arid as .such
 
 ex officio
 
 assessor and collector of the taxes for the county of Pulaski, in which county the lands in contest are sit-'' uated, conveying those lands to the ancestor of the defendants,.
 

 In this deed it is recited, that in the year 1824,' in conformity with the laws in force in the then Territory of Arkansas, the lands in contest, with several other parts of sections, all situated' in the county of Pulaski, were by the; sheriff, as
 
 éx effido
 
 assessor and collector for the county, assessed fob the taxes payable thereon for that year. That in conformity with the law, and within the time thereby prescribed, the sheriff, as
 
 ex
 
 
 *335
 

 officio
 
 assessor and collector, filed in the office of clerk of the. County Court a list of lands and town lots owned and assessed to persons then residents of said county, in which list the lands in the said deed were embraced; that a copy of the list so made and filed was by the said officer put up at the door, of the court-house of said county, and published in the
 
 Arkansas State Gazette,
 
 a newspaper printed in the Territory, for four weeks successively before the day of sale, as prescribed by law. ■ That the sheriff as
 
 ex officio
 
 assessor and collector,, in like conformity with law, on the 1st day of November, 1824, exposed and offered for sale, at the court-house of the said'county, at public auction, the several parcels or parts of sections of land above mentioned, for the payment of the taxes, and the penalty payable upon the amount of those taxes. That- Thomas Newton became the purchaser of the several parcels of land, and transferred his certificate of his purchase of those lands to James Lawson. - That the sheriff, as
 
 ex officio
 
 assessor and collector, made out and delivered to the purchaser á certificate of purchase containing the requisite description of the taxes and penalty on the lands listed* for taxation, and that the amount was paid by Newton,- the purchaser. That one year, having elapsed since the sale by the sheriff, aild that Newton, by James Lawson, having presented to Borden, the sheriff and
 
 ex officio
 
 assessor and collector, the certificate of purchase, and requested a deed to Lawson from the sheriff, the deed from Borden, as sheriff, &e., -was made to Lawson.
 

 The defendants next offered in evidence, under the certificate of the clerk of the Circuit Court,, of Pulaski county, a copy from the records of that court of the acknowledgment in open court, on the 13th of July, 1849, by Borden, as late sheriff and'collector of Pulaski county, of the deed executed by him to .Lawson for the several parcels of land therein describedj including the land in controversy, as having been sold by the predecessor of said Borden as sheriff and collector, under and by virtue of a levy and distress made upon such ''tracts of land to' secure the payment of the State and county taxes, and the penalty and costs and charges due for the years. .1824 and 1825.
 

 
 *336
 
 The defendants also proved that Thomas Newton, by a deed bearing date on the 21st of May, 1846, assigned and conveyed to James Lawson, in his lifetime, all the right, title, interest, and claim, in and to the lands purchased by Newton of the sheriff in the year 1824, and embraced in the deed from Borden, sheriff, &c., to Lawson.
 

 The defendants then offered the record, duly certified, of the proceedings on the chancery side of the Circuit Court of the county of Pulaski, on the 20th.day of February, 1850, upon a petition in the name of James Lawson in his lifetime, setting forth the several facts and transactions recited in the deed from Borden to Lawson, and also the' execution and recording of that deed; and further setting forth that he, Lawson, after the time allowed by law for the redemption of said lands, and more than six months before the commencement of the then present term of this court, caused a notice stating the authority under which said sheriff’s sales took place, and also containing the same description of the lands purchased as that given in said sheriff’s deed, and declaring the price at which said tracts were respectively bargained, the nature of the title by which the same are held, and calling on all persons who could set up any right to any part of said lands, in consequence of any irregularity or illegality connected with said sales, to show cause át .the first term of the Circuit Court of said county, six months after the publication of said notice, being the present term of the court, why the respective sales so made should not be confirmed, pursuant to a petition to be filed in this court for that purpose, to be inserted and published in the
 
 Arkansas State
 
 Democrat, a newspaper published in dLittlc Rock, for six weeks in succession, the last insertion to be more than six months before the commencement of the •present term of this court, as by affidavit of .the publisher, setting forth a copy of such notice, with the date of the first pub: lication thereof, and the number of insertions sworn to and subscribed before a justice of the peace of said county, and properly authenticated and filed with said petition, fully appears to the court, and .concluding with the decree of that court in the following words:
 

 
 *337
 
 “Whereupon all and singular the allegations made in said petition being by the production of said deeds and due proofs of the publication of said notice, proven and established to the satisfaction of the court here, and no cause, having been shown against the prayer of said petition by any person whomsoever, but the. said application being and remaining wholly unde- • fended—
 

 “It is therefore considered and adjudged and decreed by • the court here, that said sheriff’s sales, and each of them, be, and the same are hereby^ in all things confirmed, according to the statute in such case made and provided; and further, that this decree shall operate as a complete bar against any and all persons hereafter claiming said lands, or any part thereof, in consequence of any informality or- illegality in any of the proceedings aforesaid, and that the title of each .of said tracts of land be decreed and considered as hereby confirmed and completed in said James Lawson and his heirs and assigns forever; saving, however, to infants, persons of unsound mind, imprisoned, beyond the seas, or out of the jurisdiction of the United States, the right to appear and contest the title to said lands, within one year after their disabilities may be removed. And it is ordered that the petitioner pay the costs thereof.”
 

 To the admission of this record, the plaintiff in the Circuit Court objected, but the court permitted it to be read in evidence. The deed from Borden, sheriff, to Lawson; of the 2d of November, 1846, was also objected to by the same party, but was allowed to be given in evidence to the jury.
 

 Several prayers for instruction were presented, both by the plaintiff and "the defendants, and decisions thereon were made by the court. We sháll consider the following Only, as comprising the-real merits of this controversy:
 

 The objections urged against the admission of the deed from the sheriff to Lawson were—
 

 1st.' That the deed .and' the certificate of- its admission to' record' bore’ upon their face unmistakable evidence of fraud. Whát those clear marks of fraud Upon the face of those documents were, is not-.stated with sufficient particularity, in' order to á correct comprehension of their character.. The court to
 
 *338
 
 whom this objection was presented must have decided upon an inspection of the papers,-(probably correctly;) but whether correctly or otherwise, this court cannot now inquire, in compliance with assertions altogether vague, and pointing to no specific vice in any one of those papers. This first objection, therefore, to the admissibility of the deed is of no force.
 

 But the deed from Borden was further objected to, because, as it was alleged—
 

 Secondly. That there was no valid proof of the execution of such paper as a deed.
 

 Thirdly. There was no proof of the authority of the said. William B. Borden to execute such deed, or that he was, at the date of its execution or acknowledgment, collector of taxes in and for said county of Pulaski.
 

 Fourthly. It was not accompanied by proof that the said tract of land in controversy was either assessed, or taxed, or advertised; or legally sold, in the year 1824, for taxes, or that the said Henry Armstrong, as such alleged sheriff, assessor, and collector, in the year 1824, had any authority to assess said tract of land for taxation, or to sell it for the non-payment of such taxes.
 

 Fifthly. That such paper, purporting to be such deed, was not admissible in evidence until it should be first proved that all the material steps required by law, preparatory to and in the assessment and taxation of said tract of land, and in the advertisement, and sale thereof in the year 1824, and all previous steps required by law prior to the execution of such deed, had been complied with, either by record evidence or by evidence
 
 in pais.
 

 These four objections are met and overcome, first, by the .language of the statutes of Arkansas; and secondly, by the interpretation given of those statutes by the Supreme Court of that State. By the law of Arkansas regulating conveyances,"
 
 (vide
 
 Digest of the Laws of 1848, by English and Hempstead, p. 268, sec. 26,) it is declared-that “ every deed or instrument of writing conveying or affecting real estate, which shall be acknowledged or proved and certified as prescribed by that act, may, together with the certificate of acknowledgment, be
 
 *339
 
 recorded by the recorder of the county where the land to be conveyed or affected thereby shall be situate; and when so recorded, may be read in evidence in any court in’ this State without further proof of execution.” Again, in the same Digest, (pp. 888, 889, sec. 112, title Revenue,) it is declared, with respect to sales and conveyances made by the sheriff and collector for the non-payment of taxes, that “the deed so made by the collector shall be acknowledged and recorded as other conveyances of lands, and shall vest in the grantee, his heirs or assigns, a good and valid title, both in'law and equity; and shall be received in evidence in all courts of this State as a good and valid title in such grantee, his heirs or assigns,
 
 and skcdl be evidence of the regularity and. legality
 
 of the sale of such lands.” Again, (p. 889, see. 114,) it is provided, “that if any collector shall die or be removed from office, or his term of service expire, after selling, any land for taxes, and before making and executing-a deed for the same, the collector then in office shall make and execute a deed to the purchaser of such lands, in the same manner, and with the like effect, as the officer making such sale would have done.”
 

 By another provision of the statute of Arkansas, a like power to that previously mentioned as vested in the sheriff) with respect to delinquent lands, is conferred upon the auditor of public accounts, and, in the exercise of that power by the latter officer, the provisions of the statute, both as to the acts to be performed,. and the consequences to énsue from those acts, are substantially and almost literally identical with those relating to the proceedings by the sheriff.
 

 Thus, (Dig., p. 893, sec. 141,) it is enacted that “the auditor shall execute, under his hand and the seal'of his office, and deliver to each person purchasing lands or lots at such sale, a deed or conveyance, in which he shall- describe the lands or lots sold, and the consideration for which the same were sold, and shall convey to the purchaser all the right, title, interest, and-claim, of the State thereto; ” and by section 142, “the deed so made shall vest in the grantee, his heirs or assigns, a good and valid title, both .in law and equity, and shall be received in all the courts of this State as evidence óf a good and valid title in
 
 *340
 
 such grantee, his heirs or assigns, and shall be evidence
 
 that all things required by law to be done to make a good and valid sale were done, both by the collector and auditor.”
 

 In the interpretation of this provision
 
 in pari materia,
 
 the Supreme Court of Arkansas, in the. case of Merrick and Fenno
 
 v.
 
 Hutt, (15 Arkansas Reports, p. 338,) say: “A more comprehensive provision could hardly be found, and it might seem, at first view, to make the tax title derived from the auditor valid against all objections. But that was not the design. The evil to be remedied was, that the entire burden of proof was cast on the purchaser, to show that every requisite of the law had been complied with, and the deed of the officer was not even
 
 prima facie
 
 evidence of the facts therein stated. The general and prevailing principle was, that to divest the owner of land by a salé' for taxes,'every preliminary step must be shown to be in conformity with the statute; that it was a naked power, not coupled with an interest, and every prerequisite to the exercise of that power must precede it, and that the deed was not
 
 prima facie
 
 evidence that these prerequisites had been observed. The intention, and scope of the statute were to change this rule so far as to cast the
 
 onus probandi
 
 on the assailant of the tax title, by making the deed evidence, of the title of the purchaser, subject to be overthrown by proof of non-compliance with the substantial requisites of the daw. Proof, then, that any of the substantial requisites of the law had been disregarded, or that the taxes have been paid, no matter by whom, would be sufficient to destroy the tax title, whether emanating from the auditor or the collector. The deed-of the auditor is not required to
 
 contain recitals.
 
 All that is necessary is to describe the property sold, and the consideration, and to convey to the purchaser all the right, title, interest, and estate, of the former owner, as well as all the right, title, interest, and claim, of the State, to the land.”
 

 The same exposition of the statutes of Arkansas, and of the policy and necessity in which those statutes have had their origin, is given in the case of Pillow
 
 v.
 
 Roberts in this court, reported in the 13th of How., 472. The deed, then, from the sheriff and Collector Borden to Raison, was clearly
 
 prima facie
 
 
 *341
 
 evidence of the assessment, taxation, and forfeiture of the land of the regularity of every proceeding previously to the sale of the land forfeited; of the competency of the officer making the sale and conveyance; of the legal validity, of the sale; and cast upon the assailant of any of these prerequisites the burden of showing the absence or defectiveness of any of them. And ■ without such a showing, that which was
 
 prima fade
 
 proof will, be taken as conclusive.
 

 But every question with respect to the assessment of the lands in controversy, or the non-payment of the taxes, or the ' regularity of the proceedings of the sheriff and collector, inclusive of the execution and recording of the deed from that officer, seems to have been concluded by the petition of the purchaser on the chancery side of the Circuit Court of Pulaski' county, and the decree of confirmation pronounced upon that' _ petition as herein already mentioned.
 

 The provisions of the law by.which this petition by the purchaser from the sheriff or auditor of lands sold, for the nonpayment of taxes, and by which the proceedings upon such a petition, and the effect of a decree of confirmation pronounced ■ thereupon, are contained in the Digest of the Laws, pp. 966, 967, under the head of Tax Titles, sections from one to. six, inclusive. By the section last mentioned (6th) it is declared,' that the judgment or decree confirming said sale shall operate • as a complete bar against any and all persons who may thereafter claim said land in consequence of informality or illegality in the proceedings, and the title to said land shall be considered as confirmed and complete in the purchaser thereof, his heirs and assigns, forever. The decree of the Circuit Court of the county of Pulaski, before referred to-, expressly sets forth a compliance with every requisite prescribed in the aforegoing six sections of the statute, including the notice by publication calling on all persons to show any objection to the, purchase from the officer, in consequence of informality, irregularity, or illegality connected with the sale of the lands; the failure of any contestant to appear in obedience to such notice, and the expiration of the time limited in the saving reserved in behalf of those of whom exception is madé in the statute.
 

 
 *342
 
 Upon an inspection of the proceedings in the court of Pulaski, the court below was of the opinion that it constituted a valid title in the defendant against the whole world, and charged the jury that “it divested the title of the plaintiff, and ■ that since the rendition of said decree she had no title to the said tract of land, unless she has, since the date of the said decree, obtained title' thereto from or under the said James Lawson, or unless such decree was obtained by fraud.”
 

 .Of the effect of a decree of confirmation like the one in this case there exists no doubt under the construction of the statutes of Arkansas by the Supreme Court of that State, as declared in the case of Evans & Black
 
 v.
 
 Percifull, (5th Arkansas Rep., 425.) The court in that case .held the decree to be conclusive, although they thought it erroneous; yet, inasmuch as it had not been reversed for error, they ruled that it could not be collaterally impeached; and they say, in express terms, that had there been no deed from the officer,
 
 in fact, the decree would have been conclusive of the sufficiency of the evidence to warrant it.
 

 In the case of Parker
 
 v.
 
 Overman, in 18 Howard, 140, this court, commenting upon the statute of Arkansas,, has said: “In case no one appears to contest the regularity of the sale, the court is required to confirm it on finding certain facts to exist; but if opposition is made, and it should appear that the sale was made contrary to law, it- became the duty of the court to annul it. The judgment or decree in favor of the grantee in the deed operates as a complete bar against any and all persons who may thereafter claim such laud in consequence of any informality or illegality in the' proceedings. The jurisdiction of the court over the controversy is founded on the presence of the property, and like a proceeding
 
 in reni
 
 it becomes conclusive against the absent claimant as well as the present contestant.”
 

 ■ This interpretation of the statutes of Arkansas is fully coincident with that propounded by the cases of Merrick & Fenno
 
 v.
 
 Hutt, and of Evans & Black
 
 v.
 
 Percifull, already cited; and sustain the correctness of the instructions of the Circuit Court as to the effect of the decree of confirmation of the Circuit Court of Pulaski county.
 

 
 *343
 
 A question was raised in the Cireuit Court, .as to the effect of the five years’ statutory limitation upon the rights of the parties; as, for instance, whether that statute would begin to run from the date of the deed of the sheriff or from the period of the recording of that deed, or whether it could operate at all upon a constructive seizin effected . by the sheriff’s deed, or required, in order to give it effect, an
 
 actual seizin
 
 by the purchaser irom the sheriff. This question we do not deem it necessary, or even regular, in this case to discuss or determine. In the first place, the rulings of the court below; with regard to it were in favor of the plaintiff in error, and therefore can constitute no wrong or gravamen on his part. In the next place, we consider.that question embraced and concluded, or rather excluded, by the proceedings in chancery-against the property, and the confirmation of the title by the decree.
 

 The judgment of the Circuit Court is affirmed.