Mr. Justice Shepard
delivered the opinion of the Court:
This is an appeal from a judgment rendered in an action for damages for personal injuries. The plaintiff, Charles H. Poore, testified that on November 18, 1892, as he was going to market, a heavy rain storm came up from which he took refuge in the doorway of a church at the southeast corner of M and Half streets in the city of Washington. While there, about 11 A. M., a horse-car came along going west, and he left the church for the purpose of getting on it. It was still raining hard, and the street and" car track were covered with water. In endeavoring to board the car he stepped into a trench in the street which was about two and one-half feet wide and quite deep. The trench was filled with water and there were no piles of dirt in the street near it. The street was paved with cobble stones, and full of little holes which were then all full of muddy water. He saw no person near the trench or the church, and there was no guard or rail or person to warn him of the existence of said trench; and he had no knowledge whatever of its existence. His injuries were painful though not serious, and he was not permanently disabled.
On cross-examination, he said that he was dressed in rubber coat and boots, and that it was more than an ordinary rain. He was familiar with the neighborhood, but did not know the trench was being dug.
As the car came along he threw up his hand to the driver to stop the car, and the horse jumped aside to the north. He pulled the horse back, and then, in walking from the front of the car to the rear platform he fell into the trench. After his accident he got in the car and rode a few squares, and then went home and dressed his bruises, and went to see a doctor. He was suffering intense pain and could not proceed on his journev.
*133 Plaintiff then proved by the permit clerk of the District Commissioners that on November 11, 1892, a permit had been issued to the defendant to connect the said church at M and Half streets with the gas main in the street.
Evans, a witness for plaintiff, corroborated him as to the existence of the trench from the curb to the edge of the car track. He said also that he came along about 10.30 A. M., and the ditch was full of muddy water. He saw no pile of dirt near it and nothing to mark it. The uneven places or depressions in the street were filled also with muddy water.
Other witnesses corroborated the evidence of plaintiff with regard to his injuries. •
The driver of the car, called as a witness by plaintiff, said that it was raining very hard and he stood inside the car with his reins through the “ change hole ” in the door. As plaintiff hailed the car the horse shied off to the north. Plaintiff took the horse by the bridle and led him some distance. He then walked towards the rear platform to get on the car, and in doing so fell into the trench. He saw no dirt alongside the ditch, and saw no guard or rail or any person near it. On cross-examination he said that when he first saw plaintiff, he was standing on the east side of the trench. The car was going west and the horse shied to the north. Plaintiff then walked around the trench by the south side and came up on the west side of it. He took the horse by the bridle and led him past it. In going to the rear platform he fell into it.
With this testimony the plaintiff closed his case; whereupon the defendant moved the court to instruct the jury to find for it, upon the ground that no proof had been made that the trench had been dug by defendant.
The driver of the car was then recalled by the plaintiff, and testified that he went to defendant’s office on 10th street at the invitation of Mr. Hart, who was admitted to be an employee of defendant. Hart interrogated him about the accident, and informed him that the trench had been dug by the defendant. The defendant objected to this evidence “as *134 being incompetent, immaterial and nof proper as evidence in chief,” and being overruled, took an exception.
Defendant introduced evidence tending to show that the men engaged in digging the trench were compelled to desist and take shelter from the rain about 10.30 A. M. The trench between the two car tracks was about two and one-half feet wide, three feet deep and four feet long. Dirt was piled up about a foot and a half on each side of the trench, and was not washed away by the rain; it was afterwards put back in the trench.
The defendant then moved the court to instruct the jury to return a verdict for defendant on the ground that it “ was not compelled to keep its trenches covered or barricaded during the daytime, and that it had violated no duty and could not be considered guilty of negligence or held liable for damages herein.” This motion was also overruled, and defendant again excepted. Several special instructions to the jury were asked by the defendant and refused. After the charge of the court, the jury returned a verdict for the plaintiff, assessing his damages in the sum of $1,000, upon which judgment was rendered.
1. The first error assigned is founded in the exception taken to the admission of the evidence of the car driver, Sears, of the statement made to him by the defendant’s employee, Hart, to the effect that the trench had been dug by defendant. As we have seen, the ground of objection to the evidence as set forth in the exception, is that it was “ incompetent, immaterial and not proper as evidence in chief.”
The objection now urged to this evidence is, that Hart is not shown to have had authority to make the statement; that it does not appear that he had any means of knowing that the statement piade was true; that he is not shown to have been connected personally with the work; and that it is not shown that he had the conversation with the witness at the direction or with the knowledge or consent of the officers of the defendant. This specification of the grounds of objection should have been made or indicated with some cer *135 tainty at the tíme. Had this been done, the evidence would not have been admissible, and we have no doubt that the learned justice who tried the case below would have excluded it. It is a sound rule of practice that requires an objection to evidence to point to some definite and specific defect in its character. Thomas v. Lawson, 21 How., 331 ; Camden v. Doremus, 3 How., 530 ; Woodbury v. District of Columbia, 5 Mack., 127.
It has been expressly held, that an objection to evidence on the ground that it is “ irrelevant, incompetent and immaterial,” is too general, and the specification of the real grounds comes too late when made for the first time in the appellate court. R. R. Co. v. Parker, 94 Ind., 91; McCullough v. Davis, 108 Ind., 292. In this last case, the witness had been permitted, over the foregoing objection, to testify that a certain parcel of land had been awarded to one of the parties in a decree of partition. The Court of Appeals of New York have, we think, laid down a sound rule in this regard as follows: “ Where the objection to evidence is general and it is overruled and the evidence is received, the ruling will not be held erroneous, unless there be some grounds which could not have been obviated had they been specified, or unless the evidence in its essential nature be incompetent.” Turner v. City of Newburgh, 109 N. Y., 301, 305. This evidence was not in its “ essential nature incompetent,” and if the specific objection now urged had been made below, it might have been obviated by showing that Hart was a general agent specially charged with duties with respect to this particular matter, and authorized to make binding declarations concerning it, under a well established exception to the general rule that declarations of an agent are not admissible against his principal when made after the occurrence. Morse v. R. R. Co., 6 Gray, 450; Burnside v. R. R. Co., 47 N. H., 554; R. R. Co. v. Gernan, 84 Tex., 141.
Moreover, if the special objection had been made and the evidence had then been excluded, as we have no doubt it would have been, it is apparent that the plaintiff could have *136 introduced evidence showing the same fact, for it was subsequently proved by defendant itself. This rule may seem, technical and savor of strictness; but its enforcement is in. the interest of justice. We have less hesitation in its strict enforcement in this case because, as we have seen, the statement of the employee was true, as shown by the evidence of other employees who did the work, and were introduced as-witnesses by defendant.
2. The next question is, did the court err in refusing defendant’s motion, after the evidence was all in, to instruct the jury to find for the defendant “ upon the ground that the., defendant was not compelled to keep its trenches covered or barricaded during the daytime, and that it had violated no duty and could not be considered guilty of negligence or, held liable for damage herein ” ?
There was no positive requirement that the trench should be kept covered or barricaded during the day, or, for that matter, that it should be guarded or protected in any particular manner. But the request for and receipt of a license h> dig in the streets implied a promise to do the work with such care and caution as reasonably to prevent danger to the public in the ordinary use of the street, and protect the Dis-. trict government from liability. Village of Port Jervis v. Bank, 96 N. Y., 550.
A person traveling a public street is not held to expect to* find open ditches or trenches therein, dangerous to travel,, without some reasonable notice of their probable existence. Turner v. City of Newburgh, 109 N. Y., 301. In other words, the presumption of safety to travel stands until knowledge of some facts is shown from which it is reasonably to-be inferred that danger exists. Nor will it be presumed as, matter of law that a person will knowingly put himself in* danger.
If the testimony of the plaintiff is to be believed (and his. credibility is exclusively for the jury), the trench was dug so near the car track that a person wanting to board the car at the place might be compelled to cross it; there was no pile of *137 dirt alongside of it to indicate the excavation, no guard rail or sign, and no person to give warning. The trench was full of muddy water, and the ground there presented an appearance not unlike the remainder of the street at the time. Plaintiff stopped the car by hailing the driver at that point, and in walking towards the rear platform to enter had to cross the trench into which he stepped and fell. He said that he did not see it at all and did not know that it was there. It was about two and one-half feet wide.
With this evidence in the case, it was proper for the court to instruct the jury generally upon the law applicable to the case, and leave to them the question of the negligence of defendant and the contributory negligence of the plaintiff, as matters of fact for their determination.
In the latest opinion of the Supreme Court upon this subject it was said: “The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion; or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view that can be properly taken of the facts the evidence tends to establish.” Gardner v. R. R. Co., 150 U. S., 349. See also R. R. Co. v. Powers, 149 U. S., 43.
3. The third error assigned is the refusal of the court to give the following special instruction to the jury: “If the jury believe from the evidence that the horse shied or balked at the ditch between the tracks, and the plaintiff, observing this, walked around the ditch in order to reach the horse’s head and lead him past it, they must find that the plaintiff had knowledge of the existence of the ditch, and their verdict must be for the defendant.”
The court did not err in refusing this instruction. It tended rather to invade the province of the jury, and defendant received all the benefit of the point that it was entitled to under the following paragraph of the general charge: “A plaintiff can never recover against anybody as the result of negligence where his own carelessness contributed to it. If *138 he saw the trench he was bound to get out of the way of it; and if, through accident or carelessness in moving about, or stepping about it, he slipped in, that is his own loss and not the fault of the defendant.”
4. The fourth special instruction asked by the defendant was also properly refused. It is to the effect that if the trench was being lawfully dug, there was no obligation on the part of the defendant to keep the excavation covered or guarded between 10 and 11 A. M., and their verdict must be for the defendant unless they should further find that the defendant was guilty of some omission of duty that made said excavation specially dangerous. In order to sustain the court in refusing this instruction, it is unnecessary to do more than refer to what has been said in the discussion of the second assignment of error.
5. The charge of the court defined the respective duties and care devolving'upon each party in a manner as favorable to the defendant as the rules of law would permit, and no exception was taken to it save to the following words, occurring therein: “ And this probably made it a dangerous place.” In justice to the court below, a.nd in order that the objection to these words may be understood in their proper light, it is necessary to quote largely from the charge, giving some of the preceding as well as some of the succeeding words used in the same connection: “ If this trench had been dug on a fair day, it could not be said that even the leaving of it open there would be an act of negligence on the part of this company, because this accident could not have happened under such circumstances except through the fault of the plaintiff himself, or of some unavoidable accident, such as his stumbling, or slipping, or falling into the trench in that way; but on this particular occasion it appears that a sudden rain storm filled up. this trench with water. This probably made it a dangerous place. It is for you to decide whether that did make it a dangerous place for the public. Then the question is, whether these workmen took the proper precautions to prevent anybody from being injured *139 by it. The fact that it is dangerous does not necessarily load to the conclusion that the workmen were guilty of neglect, because the storm may have come upon them so suddenly, that they had not the time to prepare^ for it. They may have been driven away from this work by a tremendous storm, and the trench may have filled up and the accident happened before they knew that it was filled up, or likely to be filled up. All of these circumstances are to be considered by you. It may be that they did not know that this trench was full of water and therefore dangerous. It may be that they did not have good reasons to suppose it would fill up and therefore be dangerous. It is for you to say whether they should have had reason to suppose that this trench would fill up in consequence of this rain and would be dangerous, and whether they in fact knew it, or could have known that this thing would occur. Then the question would be, whether they exercised the proper care to guard the public against accidents.”
A trial judge ought certainly to be careful to avoid any remarks which might tend to convey an impression to the jury that he has an opinion with respect to the truth of any disputed fact that has been submitted to them for decision. But if this be done, it does not necessarily follow that a new trial must be granted. It was said recently by the Supreme Court of the United States that: “An assignment of error cannot'be sustained because the judge expresses himself as impressed in favor of the one party or the other, if the law is correctly laid down, and if the jury are left free to consider the evidence for themselves.” Lincoln v. Power (decided January 29, 1894), 151 U. S., 436, citing R. R. Co. v. Putnam, 118 U. S., 545 ; Simmons v. U. S., 142 U. S., 148.
We think it clear, however, that the words objected to in the charge in this case were not intended to give an impression to the jury of the court’s opinion of the right of plaintiff to recover, and that the jury could not have so regarded them. They were plainly and expressly told, too, that the determination of the questions of fact was with them. Upon *140 the whole, we cannot see wherein the rights or interests of the defendant could have been injuriously affected.
There being no reversible error in the proceedings on the trial belo^w, the judgment ought to be affirmed, with costs; and it is so ordered.