Chauncey CHISHOLM, Cressie E. Chisholm, now Nolan, Opal Chisholm, now Gormly, Carolyn Chisholm, now Winchester, and Enos "Pete" Chisholm, Plaintiffs in Error,

v.

Clem H. STEPHENSON and Edna Imogene Chisholm, Executrix of the Estate of Claud Chisholm, deceased, and John I. Griswold, Defendants in Error.

No. 39074.

Supreme Court of Oklahoma.
June 13, 1961.

Dick Bell, Seminole, for plaintiffs in error.

Walter Billingsley, and Allen G. Nichols, Wewoka, for defendants in error.

BERRY, Justice.

Following the death of William Chisholm, hereafter referred to as "testator", in 1957, one of his sons, Claud Chisholm, filed a petition in the County Court of Seminole County to probate the alleged will of testator.

In so far as material to the issues presented by this appeal, testator by said will bequeathed to defendant in error, Clem H. Stephenson, an attorney at law, hereafter referred to as "Stephenson", one-half of his estate in payment of an attorney's fee allegedly owing Stephenson and the sum of $6,633.50 as money allegedly lent testator by Stephenson.

Chauncey Chisholm, Cressie Nolan and Opal Chisholm, son and daughters respectively of testator, filed a contest to the admission of the will to probate. In the contest it was alleged in substance that (1) testator was incompetent to make a will as of date the will was allegedly executed; that (2) he was then under the "influence, menace and duress of" Stephenson; that (3) Stephenson "breached his fiduciary relationship between attorney and client in obtaining (testator's) signature to the will"; that (4) the will was not executed and attested as by law provided.

Upon the County Court's sustaining the contest, the proponents of the will appealed to the District Court. Following a trial de novo in the District Court before an assigned judge, the contest was denied and the will was admitted to probate. The

contestants perfected an appeal to this Court which was here numbered 38,546.

A motion to dismiss the appeal was filed by the proponents thereof upon the grounds that the appeal was not timely perfected, which motion was sustained.

After the mandate in No. 38,546 had reached the lower court, the contestants and Carolyn Winchester and Enos Chisholm, who are hereafter referred to as "contestants", instituted the instant action in the District Court seeking to vacate and set aside the judgment of said court admitting the will to probate and also sought an order restraining the County Court from making partial distribution of testator's estate. All of the defendants in error, hereafter referred to as "proponents", were made parties defendant.

The relevant portions of the petition filed in this action are these:

In the trial of the contest, the District Court permitted proponents to introduce in evidence several purported tape recordings of alleged conversations between testator and Stephenson, which conversations allegedly related to testator's making the will in controversy and a prior will; that the recordings were made in Stephenson's law office; that the verity of the recordings was supported only by Stephenson's testimony; that said "recordings misled the court and provided the basis for the trial court's judgment admitting the purported will to probate, as disclosed by the trial court's statement, 'Under these tape recordings and the testimony of Dr. Parrish I think the will is entitled to probate,' when the only question involved on such hearing was testator's mental capacity on August 2, 1957, the date of the purported will"; that the court was led to believe that the recordings had not been spliced or altered; that Stephenson knew that the recordings were not of "original conversations but in truth and in fact were tape recordings manufactured by splicing, cutting, playing back and recording out of context portions of various recorded conversations (that Stephenson) had with deceased at different times"; that

Stephenson gave false and untrue testimony when he testified that the recordings "constituted the original record of the alleged conversation between testator and Stephenson"; that Stephenson "was able to manufacture the illegal testimony by the coercion of certain employees and associates who assisted in the preparation of (the) manufactured testimony" but which persons did not know of the purpose of the manufactured evidence; that the fraud so practiced on the court was "extrinsic to the issues involved on the trial of the probate of the will and constituted fraud extrinsic to the record; that such fraud was and is so palpable as to constitute a wilful and malicious fraud upon the District Court, and to shock a Court of equity, for the reason that the judgment, ordering the purported will admitted to probate, based upon the fraudulent, false and deceitful evidence should be vacated, set aside and held for naught"; that contestants had no knowledge of the fraud practiced upon the court by Stephenson and with the exercise of reasonable diligence could not have discovered same; that contestants only learned of Stephenson's fraud from one of his associates after judgment was rendered in the District Court rejecting their contest; that all defendants in error have accepted the benefits of Stephenson's fraud.

A copy of the judgment from which the appeal in No. 38,546 was taken and a copy of the alleged will of testator were attached to the petition.

Proponents filed a demurrer to contestants' petition which was sustained by the trial court. Upon contestants electing to stand upon the allegations of their petition, their cause was dismissed. From order of dismissal, contestants perfected this appeal.

■■■ Contestants refer to the general rule in passing upon a demurrer to a petition, all allegations of the petition, together with all inferences that may be drawn therefrom, are taken as true. They assert that under said rule we must accept the allegations of the petition as true and that, as we understand their contentions, we can

only consider said allegations in deciding this case. We agree that the general rule is as contended for by contestants but we are of the opinion that we are privileged to take judicial notice of matter appearing in the case-made in No. 38,546 which bears directly upon the issues presented by the petition. See Schneider v. Decker et al., 144 Okl. 213, 291 P. 80, 81, and Wilson-Harris v. Southwest Telephone Co. et al., 193 Okl. 194, 141 P.2d 986, 148 A.L.R. 1337. In the first cited case, this was said:

"This court will take notice of its judgments and decrees, of its records and proceedings in actions formerly pending before it. It will take particular notice of proceedings formerly pending before it, to which reference is made in the pending litigation, wherein the same persons or their privies were parties and a decision vital to the pending case has been entered. * * *"

Contestants contend that the facts alleged in their petition show extrinsic fraud; that as a result of said fraud they were prevented from having a fair trial; that said fraud resulted in the trial court's entering a judgment which otherwise would not have been entered; that where extrinsic fraud is shown in obtaining a judgment, a court of equity will vacate a judgment thus obtained.

Proponents contend that the allegations of the petition show only that false testimony was introduced; that the petition therefore only shows intrinsic fraud; that a judgment will not be vacated where only intrinsic fraud is shown.

■ As a general rule, false evidence or perjury alone relative to an issue tried, is not sufficient ground for vacating or setting aside a judgment. National Aid Life Ass'n v. Morgan, 168 Okl. 224, 32 P.2d 290; Small v. White et al., 173 Okl. 83, 46 P.2d 517, and cases cited following Vol. 9, Judgments, West's Okla.Dig. ☞376. The first paragraph of the syllabus to the case first above cited reads as follows:

"False evidence or perjury alone, relative to an issue tried, is not sufficient ground for vacating or setting aside a judgment; the fraud which will authorize the court to vacate a judgment must be extrinsic or collateral to the issues tried in the cause wherein the judgment was rendered; it must be such fraud as to prevent the other from having a trial of the issues."

■ The referred-to rule is based upon the proposition that public policy requires that there be an end to litigation; that said policy would be defeated if judgments were vacated solely upon the grounds that perjured evidence was introduced in the trial of a case. See Thigpen v. Deutsch et al., 66 Okl. 19, 166 P. 901, and 49 C.J.S. Judgments § 270, p. 489.

Beginning at p. 390, 126 A.L.R. will be found annotated notes touching upon perjury as grounds for attacking a judgment. The notes reflect that there is considerable conflict in the decisions relating to the issue under consideration. This is also pointed out at p. 731, Sec. 793, and at p. 630, Sec. 660, "Judgments", 30A Am.Jur. At the close of the last cited section the author says that "it must appear in all cases that the false testimony was wilfully and purposely given, that it was material to the issue being tried, that it was not merely cumulative, but probably controlled the result, and that the fact of its falsity could not have been discovered by reasonable diligence in time to offset it at the trial."

While the above quoted statement appears to suggest a rule that is more liberal than the rule that we have adhered to in the past, we will nevertheless test the sufficiency of contestants' petition by said statement.

■ The rights asserted by proponents were based directly upon the will which was offered for probate and not upon the tape recording. The matter of whether testator had mental capacity to make said will and whether Stephenson exercised undue influence over testator were material issues in the trial in the District Court, and the tape

recording bore directly upon said issues. The tape recordings were not, however, the only evidence introduced by proponents that related directly to said issue. As indicated by the allegations of the petition filed herein and as fully developed by the case-made in No. 38,546, Dr. Parrish testified that testator was mentally competent at the time he executed the will. His testimony shows that testator was his patient at the time the will was executed; that he had had ample opportunity to observe him prior to said time and was therefore in a good position to give an opinion as to testator's mental capacity. There was also testimony of laymen to the effect that testator was mentally competent to make a will at the time he executed the will. As to possible undue influence on Stephenson's part, Stephenson testified at length concerning his relationship with testator; that he had represented testator and that testator owed him a rather sizeable fee which testimony tended to show testator's reasons for naming him as a beneficiary in the will. For reasons stated, we are of the opinion that the tape recordings represented cumulative and corroborative evidence and while same possibly influenced the trial court in admitting the will to probate, we cannot say that said recording probably did so.

 The law appears to be settled in this jurisdiction that fraud which will justify a court of equity in vacating a judgment, must be fraud extraneous to the issues presented and adjudication in the case in which judgment was rendered. See O'Brien et al. v. Van Arsdale-Osborne Brokerage Co., 80 Okl. 174, 194 P. 1083; Lewis et al., v. Couch, 194 Okl. 632, 154 P.2d 51, and cited cases. In Freeman on Judgments, Vol. 3, Sec. 1233, p. 2569, the thought expressed in the cited cases is expressed thus: "The fraud must be in some matter other than the issue in controversy in the action" and "Extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself but relates to the manner in which it is procured."

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON and IRWIN, JJ., concur.

JACKSON, J., concurs in result.