808 P.2d 661 (1991)
Harry I. DEARING; Geraldine Dearing; Anita Kamperman, an individual, and Anita Kamperman, Trustee Under the Will of W.G. Rogers, deceased, Appellants,
v.
STATE of Oklahoma, ex rel. COMMISSIONERS OF the LAND OFFICE; Board of County Commissioners of Roger Mills County; Helmerich & Payne, Inc., a Delaware corporation; ANR Pipeline Company, formerly Michigan-Wisconsin Pipeline Company, a *662 Delaware Corporation; ANR Production Company, formerly American Natural Gas Production Company, a Delaware Corporation; Cary M. Maguire, Trustee for Maguire Oil Company; Cary M. Maguire, Trustee for Russell Ambler Maguire; Cary M. Maguire, Trustee for Cary McIlwaine Maguire; Cary M. Maguire, Trustee for Ann Blaine Maguire; Cary M. Maguire; Maguire Oil Company; Gasanadarko, Ltd., Daniel B. Stuart; Stephen B. Kahn; John Hancock Mutual Life Insurance Company, a Massachusetts corporation; The Clinton and Oklahoma Western Railroad Company, an Oklahoma Corporation; and The Atchison, Topeka and Santa Fe Railway Company, Appellees.
No. 68980.
Supreme Court of Oklahoma.
January 29, 1991.
Rehearing Denied April 19, 1991.
R. Clark Musser and Martha Marshall, Musser, Bunch, Robinson & Hirsch, Oklahoma City, for appellants.
Mary A. Robinson, Oklahoma City, for appellee, State.
James W. Shephard, Andrews, Davis Legg, Bixler Milsten & Murrah, Oklahoma City, for appellee, ANR Production Co.
Hugh D. Rice and Michael R. Perri, Rainey, Ross, Rice & Binns, Oklahoma City, for appellee, Atchison Topeka & Santa Fe Ry. Co.
Leon C. Gravas, Tulsa, for appellees, Helmerich & Payne, Inc. Daniel B. Stuart, Stephen B. Kahn, Cary M. Maguire, Trustee for Russell Ambler Maguire Cary McIlwaine Maguire Ann Blaine Maguire; and Maguire Oil Co.
James Mitchell, Asst. Dist. Atty., Roger Mills County, Cheyenne, for appellees, Bd. of County Com'rs Roger Mills County.
*664 DOOLIN, Justice.
The appellants herein ("the Dearings") brought this action in the district court of Roger Mills County to quiet title to the minerals in a strip of land underlying a portion of railroad right of way in that county ("the railroad strip"). This is the third lawsuit brought to contest the ownership of the minerals and the second instituted by the Dearings.
The Dearings brought their first action in the district court of Roger Mills County in 1977 and named as defendants, among others, the State of Oklahoma, ex rel. Commissioners of the Land Office ("the State") and also named thirteen of the same defendants involved in the present action. Following a decision for the Dearings as to the railroad strip the state appealed and the decision of the trial court was reversed by this Court in Dearing v. State ex rel. Commissioners of the Land Office, 642 P.2d 226 (Okl.1982). ("Dearing I"). That case held, among other things, that any right, title or interest the Dearings might have had in the railroad strip was extinguished by the issuance to the state of certain resale tax deeds in 1930. Rehearing was denied and the decision was mandated in 1982.
Thereafter, an action to quiet title to the minerals underneath the railroad strip was brought by the railroad companies which owned and operated the right of way. This case was denominated Clinton & Oklahoma Western Railroad v. State, ex rel. Commissioners of the Land Office, Appeal number 65,175 (the railroad case") At trial of that action the district court of Roger Mills County granted cross-motions for summary judgment and quieted title to the surface in the railroads and quieted title to the minerals in the state. The Dearings were not parties to this lawsuit.
In reaching its decision in the railroad case the trial court ruled that the resale tax deeds, by which the state claimed and defended its title in Dearing I, were void. The railroad appealed the decision of the trial court which quieted title to the minerals in the state, the Court of Appeals affirmed, certiorari was denied by this Court and the cause was mandated on November 18, 1987.
The ruling that the tax deeds were void was not contested on appeal and that issue was not addressed in the Court of Appeals' opinion.
Shortly after mandate of the railroad case the Dearings instituted the present action, once again seeking to quiet their title as against the state and the other named defendants. Upon motion by the state the trial court dismissed, holding that this lawsuit was barred by res judicata because of the previous decision in Dearing I. From this ruling the Dearings appeal.

I. Res Judicata
The doctrine of res judicata is that a final judgment of a court of competent jurisdiction upon a matter properly before it concludes the matter as to the parties to the litigation and their privies and constitutes a bar to a new action upon the same cause of action, either before the same or any other tribunal.[1] The most often stated rationale for the doctrine is that public policy requires there be an end to litigation.[2]
In addressing the application of the doctrine this Court has set down the elements required to constitute a good plea of res judicata. We have held there must be an identity of subject matter, of parties, of the capacity of the parties and an identity of the cause of action.[3] There are other requirements which have been imposed to make out a good plea of the doctrine. One holds that the court which heard the original *665 action must have been one of competent jurisdiction.[4] Another is that the judgment rendered must have been a judgment on the merits of the case and not upon purely technical grounds.[5]
A comparison of the facts before us in the instant case with those in Dearing I, shows substantial identity of subject matter (minerals beneath the "railroad tract"), of parties (Dearings, as plaintiffs and thirteen of the seventeen named defendants), of the capacity of the parties, and an identity of the cause of action (to quiet title to the mineral interest underlying the railroad tract). There is no argument or objection that the District Court of Roger Mills County herein was not a court of competent jurisdiction to hear either action.
The Dearings do argue that this Court's decision in Dearing I was not one on the merits of that controversy. They advance the proposition that the finding by this Court that they were vested with no title in the subject real property was a purely technical construction. They argue that by finding they had no title this Court was merely ruling that they technically lacked "capacity to sue." We believe this is a misconstruction both of the concept of legal capacity and of what constitutes a judgment on the merits.
The conclusion reached in Dearing I was:
In order to prevail they [Dearings] must show a mineral interest of their own. That mineral interest was lost when the Dearings' title to the "farm" became divested by the resale tax deeds.[6]
In an action to quiet title to real property, a decision by a court of competent jurisdiction that the plaintiffs have no title in or to the subject property is a judgment on the merits of that controversy for all purposes, including doctrine of res judicata. Thus the Dearings cannot avoid the application of the doctrine on the grounds the prior judgment was not on the merits.
Dearings next assert that the doctrine of res judicata cannot be applied in the instant case because to do so would defeat an action based on rights which came into being after the decision in Dearing I was rendered. They rely on the venerable rule which says:
The estoppel of a judgment extends only to the facts as they were at the time the judgment was rendered and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts intervene before the second suit, furnishing a new basis for the claims and defenses of the parties respectively, the issues are no longer the same, and consequently the former judgment cannot be pleaded in bar.[7]
To invoke this rule and this authority in the instant case Dearings argue as follows: In Dearing I this Court found Dearings held no title in the subject property because their title, previously valid, was cut off by the 1930 tax deeds. In the railroad case those tax deeds were adjudged to have been void. The act of the trial court of declaring the deeds void served to reinstate the Dearings' title by virtue of having removed the very instrumentality which this Court found had divested them. Thus, they say, the key fact present in Dearing I, the existence of the tax deeds, changed between the time of that lawsuit and this one, and a new fact intervened which changed the issue by revesting title in Dearings.
This set of circumstances, they argue, brings the case within the rule which says:
[W]here, after the rendition of a judgment, subsequent events occur, creating a new legal situation or altering the legal rights or relations of the litigants, the judgment may thereby be precluded *666 from operating as an estoppel. In such case, the earlier adjudication is not permitted to bar a new action to vindicate rights subsequently acquired, even if the same property is the subject matter of both actions.[8]
This Court has applied the foregoing rule to actions to quiet title and has held that no judgment upholding a deed or quieting title has any effect to prevent the parties from thereafter executing or taking conveyances which may change the title or rights fixed by the judgment.[9] If, after the Dearing I decision was rendered, Dearings had obtained some new title by conveyance the prior adjudication would be no bar to the litigation of that new title.
So then the issue before us is narrowed to a determination of what was the effect on Dearings' title, if any, caused by the ruling of the trial court in the railroad case that the tax deeds were void.
The long-standing rule in Oklahoma is that a tax deed based upon a void tax sale does not entitle the holder of such deed to possession of the land therein described.[10] Further, a tax deed that is absolutely void either on its face or otherwise does not cut off the rights of an original owner of the land to litigate the deed's validity.[11] We also said a void tax deed is like a void judgment, which is but "a dead limb upon the judicial tree, which may be lopped off at any time."[12]
Because the record in the railroad case is not before us we cannot evaluate the facts nor the arguments and authorities which led the trial court there to declare the tax deeds regarding the railroad tract to be void. While there are many arguments and allegations of error which could have been raised in the railroad case to rebut the attack on the tax deeds, that determination was not contested on appeal. It has now become final and constitutes the law of that case.[13] The question is whether the Dearings, as non-parties to the railroad case, can avail themselves of the law of that case to be reinvested with title to the subject property.
To determine the effect on the Dearings' title of the judgment in the railroad case it is first necessary to analyze and define the nature of an action which was brought to determine the validity of a tax sale. We have previously held that where the state institutes proceedings to sell land for the payment of a tax lien, it may proceed directly against the land.[14] We agree with the Supreme Court of Kansas, which has held that such a tax foreclosure sale which proceeds strictly against the property is an action in rem.[15] Logic *667 dictates that if an action to foreclose a tax lien is one in rem, then a subsequent action which challenges the validity of that foreclosure, i.e. the railroad case, must also be one in rem.
This being so, we are then faced with the rule that judgments in rem are held to be binding and conclusive not only on the immediate parties to the litigation, but upon all persons who may be interested in the res.[16] This rule has been more simply stated by saying, "a judgment in rem binds the whole world."[17] Therefore, since the judgment rendered in the railroad case was a judgment in rem which declared the tax deeds void, it would be binding not only upon the parties to that lawsuit, but also upon all others who were "interested in the res."[18]
We do not believe that the term "interested in the res" is to be applied strictly to mean "persons holding title." The phrase may and should be interpreted to include persons who could stand to benefit by or suffer from the decision affecting the res. The Dearings were persons interested in the res as that term is used hereinabove and they, no less than the parties to the suit, were bound by the trial court's ruling in the railroad case. Because the tax deeds were void insofar as they seemed to vest title in the commissioners, so were they void to cut off title in the Dearings.
So long as those tax deeds were valid the Dearings' interest was nonexistent, as was plainly stated in Dearing I. That decision was conclusive upon the facts as they then existed. The subsequent decision in the railroad case has had the effect of materially changing the fact of the validity of the tax deeds, to the point that those deeds are no longer the primary controlling factor to determine title to the subject property. We were not, in Dearing I called upon to analyze or decide other muniments of title and our decision in that case cannot be used to bar further judicial inquiry on matters not concluded therein.
We therefore hold that the Dearings' action herein is not estopped by the doctrine of res judicata because that doctrine may not be used to bar a quiet title action where the plaintiffs have acquired some new color of title after the rendition of a former judgment. This rule holds true even if the parties, their capacity, the cause of action and the property in question are identical. Here, the Dearings acquired sufficient color of title to defeat res judicata by virtue of the unappealed holding in a proceeding in rem to the effect that the tax deeds were void.
In reaching our holding we do not intend to depart from the long-standing policy embodied by the doctrine res judicata that there must be an end to litigation. We note the highly unusual facts and circumstances involved in this progression of three lawsuits, and we note especially that the state might have availed itself of the protection of res judicata and/or issue preclusion during its defense of the railroad case. Further, if the ruling of the trial court in that case that the tax deeds were void were in error, the state could have urged the error on appeal. Had those steps been taken the state's interest as pronounced in Dearing I might have been fully protected and this third lawsuit perhaps could have been avoided.
While the situation here is very uncommon it is not unique. Similar circumstances have occurred often enough to give rise to the rule, which we adopt today, that where in two actions inconsistent final judgments are rendered, it is the later, not the earlier judgment that is accorded conclusive effect in a third action under the rules of res judicata.[19]
*668 We pronounce today no new or radical changes to the doctrine of res judicata. Our holding simply applies time-tested rules to an extraordinary situation.

II. Statute of Limitation
The state and the other appellees herein also raise as a defense to this action the matter of the statute of limitation in real actions. They cite 12 O.S.1981, § 93, which reads in pertinent part:
Section 93. Limitations of real actions

Actions for the recovery of real property... can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter:
(1) An action for the recovery of real property sold on execution, ... or other judicial sale ... within five (5) years after the date of the recording of the deed made in pursuance of the sale or proceeding...
* * * * * *
(3) An action for the recovery of real property sold for taxes, within five (5) years after the date of the recording of the tax deed ...
* * * * * *
(6) Numbered paragraphs 1, 2, and 3 shall be fully operative regardless of whether the deed or proceeding upon which the deed or judgment is based is void or voidable in whole or in part, for any reason, jurisdictional or otherwise;...
A literal reading of the applicable provisions of this statute would appear to support appellees' position that the Dearings' action is time-barred. Our previous interpretation of section 93, however, has found an additional requirement which is crucial to its application in the instant case.
In the case of Williams v. Bailey, 268 P.2d 868, 871, (Okl.1954), we held:
Thus to give (12 O.S. § 93) the force and effect which Legislature intended we hold possession is a requirement of the statute in connection with recordation of deed and the running of the period of limitation prescribed in paragraphs one, two and three, and we hold the statute is valid. [emphasis added].
This holding was elaborated upon in Kizzire v. Sarkeys, 361 P.2d 1082, 1084 (Okl. 1961), where it was held:
Where the base title holder is in possession, the five-year statute does not run in favor of the void tax deed holder. [citations omitted].
* * * * * *
When the land is vacant, the constructive possession is in the valid title holder. [citations omitted].
The sum of the above opinions is that in order to make (12 O.S. § 93) applicable there must be a holding of possession by the void tax deed holder for five years under the same conditions as have been applied in cases involving adverse possession under the fifteen year statute.
Of primary importance in applying the foregoing rule to the case at hand is the fact that the only property in issue is the right to the oil and gas and other minerals underlying the railroad strip. As the Court of Appeals correctly stated in the railroad case, severed minerals can only be held adversely by removal of the minerals from the land.[20]
In this instance, actual possession of the minerals beneath the railroad strip did not occur until September, 1976, when the state's lessee commenced production. Within one year, in 1977, Dearings filed their first action to quiet title, well within the five year period of limitation. The ultimate outcome of that suit, as noted earlier, was a decision by this court that the Dearings had been divested of title by virtue of the tax deeds. From the time of that decision and until the tax deeds were declared void, the Dearings had no legal basis upon which to prosecute their claim.
This court, in Johnson v. Johnson, 182 Okl. 293, 77 P.2d 745, 747 (1938), held that, *669 "... whenever one is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented from doing so is not to be counted against him in determining whether the statute of limitation has barred his right." The 10th Circuit Court of Appeals cited Johnson and noted that there is a "... presumption that one having a well-founded claim will not delay in enforcing it beyond a reasonable time, if he has the power to sue ... but the basis for this presumption is gone whenever the ability to resort to the courts has been taken away."[21]
Because Dearings were found to have no title by the decision in Dearing I, they were precluded from resort to the courts for as long as the facts underlying that decision remained unchanged. The five-year statute of limitation which began in September, 1976, was tolled in 1977, and did not begin to run anew until the trial court's decision in the railroad case on August 26, 1985. The present action was then commenced on March 20, 1986. At no time since the commencement of production of oil and gas has the statute of limitation run for five full years without impediment. Further, the chronology of events clearly shows that the Dearings acted promptly in each instance upon learning of some event which affected their interests.
For the foregoing reasons, we conclude that the five-year statute of limitations contained in 12 O.S.1981, § 93 did not begin to run until the commencement of production of oil and gas in September, 1976, and that the statute was tolled by the filing of the Dearing I lawsuit in 1977. The said statute did not begin to run again until the judgment of the district court in the railroad case on August 26, 1985, and therefore the filing of the instant suit on March 20, 1986, was timely.

III. The Simplification of the Land Titles Act
Appellees further argue that the Dearings are precluded from asserting any right, title or interest in or to the minerals underlying the railroad strip by virtue of the provisions of the Simplification of Land Titles Act, 16 O.S.1981, § 61, et seq. By its own terms, however, that Act does not operate against a claimant who is in possession of the real estate in question.
As has been stated before: minerals can only be reduced to possession through production.[22] Without production, which in this case did not begin until September, 1976, appellees were not in possession, therefore possession remained in the Dearings.[23] The Simplification of Land Titles Act, supra, says at § 62(d):
Provided, further, that this section shall not apply against any person claiming adversely to such muniment (i.e., resale tax deed, judgment, etc.) who is in possession of the land by occupancy or by occupancy of a tenant at the time said purchaser for value acquires his interest.
So, then, Dearings, as base title holders, were not put out of constructive possession of their minerals until 1976, whereupon they promptly commenced suit to quiet title. The same policies and precedents which apply to the discussion of statute of limitations (Versluis, note 21, supra) apply to any discussion of the Act. A claimant to an interest in real estate cannot be divested of that claimed interest by operation of the Simplification of Land Titles Act when the claimant is prevented by supervening authority from acting to preserve his or her title during the ten-year period of recordation set down in the Act.
We therefore hold that the trial court erred in its finding that prosecution of this action was barred by the doctrine of res judicata. We further hold that it is not *670 barred from proceeding by either the statute of limitation in real actions, nor by the Simplification of Land Titles Act.
In reaching our decision that the case may proceed we do not pass on the ultimate issue of title to the minerals underlying the railroad strip. That question remains in controversy and must be concluded by the trier of fact below.
The decision of the trial court is REVERSED and the cause REMANDED for further proceedings.
SIMMS, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.
OPALA, C.J., and LAVENDER and SUMMERS, JJ., dissent.
NOTES
[1] Runyan v. City of Henryetta, 321 P.2d 689, 693 (Okl.1958).
[2] Chisholm v. Stephenson, 363 P.2d 229, 232 (Okl.1961), and see: Heiser v. Woodruff, 327 U.S. 726, 740, 66 S.Ct. 853, 860, 90 L.Ed. 970 (1946).
[3] Marshall v. Amos, 442 P.2d 500, 504 (Okl. 1968), Epperson v. Halliburton Co., 434 P.2d 877, 879 (Okl.1967).
[4] Bruce v. Miller, 360 P.2d 508, 512 (Okl.1961).
[5] Powell v. Chastain, 359 P.2d 336, 340 (Okl. 1961), "A judgment upon a demurrer which is based upon formal or technical defects of pleadings, a lack of jurisdiction, a mis-joinder of parties, or the like, as it does not involve the merits of the controversy, cannot be made available as res judicata."
[6] Dearing v. State, supra, at 230.
[7] Marks v. Stevens, 72 Okl. 186, 179 P. 7, 8, (1918) and see: 2 Freeman on Judgments, § 712.
[8] 46 Am.Jur.2d § 443, citing, among others, Restatement, Judgments § 54, stating that where a judgment is rendered for the defendant on the ground of the non-existence of some fact essential to the plaintiff's cause of action, the plaintiff is not precluded from maintaining an action after such fact has subsequently come into existence. See also: State v. Cotton Belt Ins. Co., 97 N.M. 152, 637 P.2d 834 (1981).
[9] Colby v. Stevenson, 265 P.2d 477, 479 (Okl. 1953).
[10] Wilcox v. Westerheide, 199 Okl. 312, 185 P.2d 452, 455 (1947).
[11] Lind v. Stubblefield, 138 Okl. 280, 282 P. 365, 366 (1929).
[12] Pettis v. Johnston, 78 Okl. 277, 190 P. 681, 689 (1920).
[13] Sand Springs Home v. State, ex rel. Dept. of Highways, 536 P.2d 1280, 1284 (Okl.1975) and Billy v. LeFlore Co. Gas & Elec. Co., 146 Okl. 227, 293 P. 1009, 1014 (1930), which says: Equity will not intervene to protect one against an erroneous judgment who has failed to avail himself of an appeal.
[14] Cornelius v. Jackson, 201 Okl. 667, 209 P.2d 166, 177 (1949); Appeal to U.S. Supreme Court dismissed, 335 U.S. 906, 69 S.Ct. 412, 93 L.Ed. 440 (1949).
[15] Boeing Airplane Co. v. Board of County Com'rs., 164 Kan. 149, 188 P.2d 429, 432 (1947). Accord, Multnomah County v. Reed, 203 Or. 21, 278 P.2d 135, 136 (1954), Carstens & Earles, Inc. v. City of Seattle, 84 Wash. 88, 146 P. 381, 385 (1915), and see: 3 Freeman on Judgments, § 1520 p. 3119, which says:

A judgment for taxes, for the partition of property, or the foreclosure of a lien is in rem, if the proceeding is against the property or against all owners and claimants thereof, though generally such judgments are against designated persons, and in effect are restricted to their interests.
[16] Thomas v. Lawson, 21 How. 331, 16 L.Ed. 82, 86 (1859); Myers v. International Trust, 263 U.S. 64, 73, 44 S.Ct. 86, 88, 68 L.Ed. 165 (1923), and see: Black, 2 Law of Judgments (1891) § 602.
[17] Becher v. Contoure Laboratories, 279 U.S. 388, 391, 49 S.Ct. 356, 357, 73 L.Ed. 752, 754 (1929).
[18] Hanson v. Denckla, Note 12, 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958).
[19] Restatement, Judgments 2d § 15.
[20] [T]he only way for a ... person to acquire a title or interest in minerals by adverse possession is "to take actual possession of the minerals by opening and operating mines for the statutory period." Mohoma Oil Co. v. Ambassador Oil Corp., 474 P.2d 950, 960 (Okl.1970).
[21] Versluis v. Town of Haskell, Oklahoma, 154 F.2d 935, 943 (10th Cir., 1946), quoting United States v. Wiley, 78 U.S. 513, 11 Wall. 513, 20 L.Ed. 211 (1865).
[22] Mohoma Oil Co., supra, note 20. Adverse possession of minerals is impossible without production. Pan Mutual Royalties v. Williams, 365 P.2d 138 (Okl.1961); Barker v. Campbell-Ratcliff Land Co., 64 Okl. 249, 167 P. 468 (1917).
[23] Williams v. Bailey, supra; Morton v. Van Orsdol, 203 Okl. 394, 222 P.2d 520 (1950); Sarkeys v. Payte, 274 P.2d 539 (Okl.1954).