**Allen WACOCHE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–500.**

Court of Criminal Appeals of Oklahoma.

April 27, 1982.

Tim K. Baker, Tahlequah, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The facts of this case reveal a most reprehensible criminal episode. On January 29, 1979, the victim, S.J., attended an evening class at Northeastern University. As she was walking to her car after class, she noticed a man walking to her left. Seconds after she started her car, the door on the driver's side flew open. The assailant, whom she later identified as Allen Wac-

oche, told her to "get over." He then hit her on her left cheek with the butt of his pistol.

Once in the car, Wacoche ordered S.J. to remove her coat and shoes and place them in the back seat of the car. He drove the car from the university and demanded that she undress. He unzipped his pants and forced her to orally sodomize him before raping her. As the appellant continued driving, S.J. begged him to allow her to put her clothes back on. He told her that she could, but to leave her shoes and coat in the back seat. The temperature that night was below freezing.

On three different occasions the appellant stopped the car and ordered the victim to get out. Each time he made her walk in the snow without her shoes or coat. Each time he threatened to kill her. Only after pleading for her life was she allowed back into the car. The fourth time the accused stopped the car, S.J. was not so fortunate; the assailant ordered her to get out of the car and to walk to the edge of a cliff, and told her to "go on over." As she fell over the cliff she grabbed a branch of a tree, breaking her fall, and landed on a ledge.

As she laid on the ledge, the assailant shot her in the stomach. She remained there until she heard him drive away, and then somehow managed to climb back to the road and followed a path to a nearby house where she sought help. S.J. remained in the Tahlequah hospital for twenty-five days recovering from the gunshot wound.

## I

The first allegation of error deals with the victim's identification of the appellant. The appellant alleges that the pre-indictment lineup was unnecessarily suggestive and tainted the victim's in-court identification. The State does not argue that the lineup was proper, but instead argues that the victim's in-court identification was independently reliable.

■ In *Green v. State*, 594 P.2d 767 (Okl. Cr.1979), this Court held that "although the pretrial confrontation may be needlessly suggestive, it does not strictly follow that the in-court identification must be suppressed." The trial court must look at the "totality of the circumstances" and determine whether there is a substantial likelihood of irreparable misidentification. Here, the trial judge ruled that the unconstitutional pretrial lineup did not taint the in-court identification. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), held

> the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

■ The trial court's ruling admitting the victim's in-court identification is supported by the record. Mrs. Jones spent approximately two and one-half hours with the assailant. During a substantial portion of this time she was as close as twelve inches from the appellant's face. Additionally, the car door was opened on several occasions, allowing her to observe the appellant while the interior car lights were on. Also, car instrumentation lights were on during this traumatic experience. On innumerable occasions the victim directly faced her assailant.

In the hospital the victim gave a description of the assailant, which generally matched the appellant's age, weight, height and hair length. The victim testified, "I see him here and I recognize his face. I will never forget it." She also testified that she identified the appellant from her recognition of his face on the night she was raped.

After reviewing the entire record, we hold that there was no substantial likelihood of misidentification. The victim's in-court identification was properly admitted.

## II

Wacoche argues that he was denied due process of a fair and impartial trial. He claims that one of the jurors had spoken to the bailiff during the trial. The bailiff informed the trial judge that Juror Knight, during a recess, stated to him that the defendant "just went out and did the same thing" and that is how they caught him. The bailiff replied, "You can't consider that." Juror Knight then allegedly stated, "I know we can't consider it."

In *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the Supreme Court reiterated every defendant is entitled to have 'a panel of impartial, indifferent jurors.' The *Murphy* Court stated:

"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in Court.' *Supra*, at 800, 95 S.Ct. at 2036; citing, *Irvin v. Dowd*, 366 U.S. at 723, 81 S.Ct. at 1642."

In *Townley v. State*, 355 P.2d 420 (Okl.Cr. 1960), this Court was presented with a similar situation. In *Townley, supra*, at 431, there was testimony that an attorney was seen talking with two jurors. At the time, the two jurors were sitting on the criminal trial of the defendant. The attorney, in question, was representing the prosecuting witness in a civil action against the defendant. In *Townley* this Court affirmed the conviction holding that the defendant had not shown that he was prejudiced.

■ The *Townley* Court enunciated that a distinction is made between misconduct which occurs prior to submitting the case to the jury and misconduct which occurs after the jury has retired for deliberations. When the alleged misconduct occurs subsequent to the submission of the case to the jury, the misconduct is presumed to have prejudiced the defendant and it is incumbent upon the State to show that he was not prejudiced. However, where it appears that a juror converses with third parties during the trial and prior to deliberations, there must be a showing by the defendant that he was prejudiced. *Parks v. State*, 457 P.2d 818 (Okl.Cr.1969).

In this case, the trial judge ruled that Juror Knight knew he could not consider the extraneous evidence in the case and that he had promised at *voir dire* that he would only try this case on its merits. Additionally, every juror except one had indicated at *voir dire* that they had read or heard something about the case. The defense had an opportunity to *voir dire* each juror as to any impressions they might have obtained from these extraneous sources.

■■ The trial judge has broad discretion in ruling on the issue of prejudice resulting from extraneous information being read or heard by the jury concerning the trial. *McDonald v. State*, 553 P.2d 171 (Okl.Cr.1976); citing, *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). This is a very close issue, however, we find that the trial court did not abuse its discretion. The defendant has failed to show that he was prejudiced or that he was denied a fair and impartial trial. But *see also Pulliam v. State*, 491 P.2d 353 (Okl.Cr.1971) (finding that the trial court abused its discretion); and, *Glasgow v. State*, 370 P.2d 933 (Okl.Cr.1962) (upholding trial courts ruling).

■ We comment with consternation, however, on the motion for new trial hearing, which was conducted on December 6, 1979. At this hearing several jurors were called to relate to the trial court discussions which occurred during the jury's deliberation. The sanctity of the jury room cannot be invaded. *Munn v. State*, 459 P.2d 628 (Okl.Cr.1969). Jurors cannot impeach or contradict their verdict by affidavits or testimony after they have been discharged from the jury. *Daniels v. State*, 554 P.2d 88 (Okl.Cr.1976).

Title 12, Section 2606(B) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror shall not

testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon his or another juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes during deliberations. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying shall not be received for these purposes. 12 O.S.1981, § 2606.

In this case, the proper procedure would have been for the trial court to question Juror Knight in chambers at the time the parties became aware of the situation. The trial court could properly question the juror whether any extraneous prejudicial information was brought to his attention.

### III

■■■ Wacoche complains that the State's closing argument was so prejudicial as to require reversal. In closing argument the prosecutor inferred that the appellant had destroyed evidence during the six-month period between the rape and the appellant's arrest.

The right of argument encompasses a broad "freedom of speech and the range of discussion, illustration and argumentation" is given wide latitude. *Frazier v. State*, 607 P.2d 709 (Okl.Cr.1980). This right includes discussion of the evidence and any inferences and deduction arising from the evidence. *Supra* at 711. In this case, we do not find that the State's argument was so grossly improper as to require a new trial. The State's closing argument did not deny the appellant a fair trial.

### IV

■■■ Wacoche next contends that the prosecutor attempted to define "reasonable doubt" to the jury. This Court has stated on numerous occasions that it is error for any party, including the trial court, to attempt to define "reasonable doubt" to the jury. *Miller v. State*, 567 P.2d 105 (Okl.Cr. 1977); *Fellows v. State*, 508 P.2d 1089 (Okl. Cr.1973); *Mayfield v. State*, 17 Okl.Cr. 503, 190 P. 276 (1920). We are not convinced that the prosecutor's statement regarding "reasonable doubt" was an attempt to define the term. Furthermore, the appellant did not object at trial to the prosecutor's comment nor did he raise this issue in his motion for new trial. We find that this issue is not properly preserved, and is not reviewable on appeal, unless it rises to the level of fundamental error. *See Luker v. State*, 552 P.2d 715 (Okl.Cr.1976). The prosecutor's comments did not amount to fundamental error.

### V

■■■ Wacoche contends that the trial court erred in allowing the police artist, who had drawn a composite of the suspect, to testify about the similarities between the composite drawing and the appellant. He contends that the artist's testimony invaded the province of the jury. The general rule is that witnesses should not give their opinion on matters which the jury is equally competent to determine themselves. *Rice v. State*, 80 Okl.Cr. 277, 158 P.2d 912 (1945).

In this case, defense counsel had called the police artist as a defense witness. He extensively examined him about the facial dissimilarities between the victim's description of the suspect and accused's facial characteristics. Therefore, we find that the defense opened the door to the State's cross-examination of the police artist about the similarities between the composite drawing and the appellant's facial characteristics. Where the prosecutor's remarks or questions are initially raised by defense counsel, they will generally not be grounds for reversal. *See* 12 O.S.1981, § 2611(C). Counsel may generally cross-examine a witness on all matters covered during direct examination.

## VI

The appellant argues that a new trial should have been granted. He asserts that prior to trial the district attorney, Nathan Young, exerted pressure to have a defense witness fired from his job because of the witness's unfavorable testimony. Second, he asserts that the district attorney paraded another alleged rape victim before the jury. Finally, he claims that the district attorney, the night before the trial, called or talked with two jurors about the case. The appellant has raised some very serious allegations of misconduct by the assistant district attorney.

At the motion for new trial hearing the defense called the two jurors to determine whether the assistant district attorney had talked to them about the case. Both jurors stated that they did talk to Mr. Young the night before the trial, but that there was no discussion about the merits of the Wacoche trial. At the conclusion of the motion for new trial hearing, the trial judge ruled that the testimony of the jurors did not establish misconduct of the district attorney's office.

In regard to the incident in which another alleged rape victim, Violet Trammel, was brought into the courtroom the trial judge ruled that he did not believe that any of the jurors even knew who Violet Trammel was at the trial. Thus, the appellant was not prejudiced. On the issue of whether Mr. Young exerted pressure to have a defense witness fired from his job because of the unfavorable testimony, the trial judge ruled even if it did happen it did not affect the defendant's trial. The assistant district attorney denied all allegations of misconduct. We find that appellant has failed to sufficiently support his allegations of misconduct by the prosecutor. There is no evidence to substantiate the appellant's assertion of misconduct.

We hold that the record sufficiently supports the trial judge's rulings in regard to the alleged misconduct by the assistant district attorney. However, we remind all prosecutors that they must at all times avoid even the appearance of impropriety throughout all phases of a criminal proceeding.

## VII

Wacoche contends that the evidence was insufficient to sustain the jury's verdict. By the very nature of the crime, most rape cases are prosecuted on the testimony of the victim. In *Maxwell v. State*, 78 Okl.Cr. 328, 148 P.2d 214 (1944), this Court stated:

> [T]he testimony of the prosecutrix in a rape case must be clear and convincing, and where it bears upon its face inherent evidence of improbability, is contradictory, inconsistent or unreasonable, it will be held as insufficient and under these circumstances must be corroborated to the extent of making it sufficient.

In a rape case this Court will carefully examine the record and determine whether it adequately supports the verdict of guilty.

In this case, the victim's testimony was unwaivering during direct examination and cross-examination. Her identification of the accused, based upon the night in question, was positive and convincing. Her testimony was corroborated by the evidence of the bullet wound in her stomach. Additionally, her testimony was corroborated by the owners of the house where she sought help. They testified that the victim arrived at their house without shoes and a coat and had been shot. They further stated that the victim told them what had happened and asked them to call her husband. The story the victim told them was substantially the same as her testimony at trial.

We hold that the evidence was sufficient to sustain the jury verdict.

## VIII

The final issue we will address is whether the appellant's statements to Officer Thompson were properly admitted at trial. At an in-camera hearing Thompson testified that he questioned the appellant in the county jail. He stated that he informed

the appellant of his *Miranda* rights. Officer Thompson had gone to the jail to question Wacoche about an unrelated rape. At the time of this questioning Wacoche had retained counsel.

The trial judge ruled that the appellant voluntarily and intelligently waived his right to remain silent and his right to have an attorney present. The trial judge also found that the defendant's statement to Thompson, that he had gone to the Safeway store on the night in question, was voluntarily obtained.

The issues at bar are closely analogous to the issues resolved in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards*, police officers informed the accused of his constitutional rights. Edwards stated that he wanted an attorney before making a deal. At that point all questioning ceased. The next day two detectives met with Edwards and stated that they wanted to talk to him and informed him of his *Miranda* rights. At this interview Edwards confessed. The Supreme Court held that the police interrogation after Edwards had invoked his rights to consult counsel was improper under those particular facts.

The *Edwards* Court held:

"It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'

.   .   .   .   .

... [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police."

At the time Officer Thompson interrogated Wacoche, he had previously obtained counsel. At this second interrogation Wacoche did not affirmatively waive his right to have his attorney present. Additionally, he did not initiate the communication with the police. Therefore, we find that Wacoche's statement was obtained in contravention of the *Edwards* decision.

We will now address whether the State could properly use Wacoche's statement, "that he had gone to Safeway on the night of the rape," to rebut his trial testimony that he "never" left his house on the night in which the rape allegedly occurred.

In *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 23 L.Ed.2d 1 (1971); and *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the Supreme Court weighed the interest in deterring police illegality against the interest in discouraging perjury. The Court held that the exclusionary rules were not intended to prevent the use of unconstitutionally seized evidence to impeach the accused's credibility. The Court in *Harris, supra*, 401 U.S. at 224, 91 S.Ct. at 645, stated:

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* doctrine [*Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] would be a perversion of the Fourth Amendment. *Quoting, Wald-*

*er v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed.2d 503 (1954).

.    .    .    .    .

The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with a prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements.

■ In this case, we hold in accord with *Harris* that the appellant's statement to

Officer Thompson was properly admitted to impeach his testimony at trial.

Accordingly the appellant's conviction is AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.