OSCN Found Document:MCCAULEY v. STATE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 MCCAULEY v. STATE
2024 OK CR 8
Case Number: F-2022-208
Decided: 04/04/2024
DAKODA AARON MCCAULEY, Appellant v. STATE OF OKLAHOMA, Appellee

Cite as: 2024 OK CR 8, __ __

 

 

O P I N I O N

HUDSON, JUDGE:

¶1 Appellant, Dakoda Aaron McCauley, was tried and convicted by a jury in the District Court of Osage County, Case No. CF-2018-135, of Manslaughter in the First Degree (Heat of Passion), in violation of 21 O.S.2011, § 711.[1] The jury sentenced McCauley to twenty-two years imprisonment. The Honorable Burl O. Estes, Associate District Judge, presided at trial and pronounced judgment and sentence in accordance with the jury's verdict.

¶2 McCauley now appeals and alleges four propositions of error.[2] After careful review, we reject these claims and affirm McCauley's judgment and sentence.

FACTS

¶3 Given the nature of Appellant's claims on appeal, a lengthy recitation of the facts surrounding his conviction is unnecessary. In summary, Appellant fatally stabbed thirty-year-old Frankie Cotto during the early morning hours of May 9, 2018. The fatal stabbing occurred at Appellant's rural home in Barnsdall. Appellant suspected his girlfriend, Carley McCauley,[3] was having a sexual relationship with Cotto. On the morning in question, after a night of drinking together, Appellant attacked Cotto, stabbing him repeatedly in the back with Cotto's own twelve-inch hunting knife as Cotto physically struggled to get away. Cotto suffered numerous injuries during the physical altercation: a laceration on the back of his head that was consistent with blunt force trauma; two stab wounds to his upper back that punctured his right and left lungs; a knife wound to the back of his right upper arm; a fractured nose; bruising to his cheeks and forehead; a laceration and an abrasion/contusion to his lower lip; and abrasions to both his knees and the back of his elbows. Cotto's death was caused by multiple sharp force injuries. Appellant suffered no significant injuries. At trial, Appellant asserted that he acted in self-defense.

ANALYSIS

1. Jurisdiction

¶4 Appellant claims in his first proposition of error that the District Court lacked jurisdiction to try him. Appellant argues he is a citizen of the Osage Nation and the crime occurred within the boundaries of the Osage Nation Reservation. Appellant raised this claim for the first time below in a Motion for New Trial filed on February 10, 2022 (O.R. 495-98).[4] Appellant contended therein, inter alia, that McGirt v. Oklahoma, 591 U.S. __, 140 S. Ct. 2452 (2020) overruled prior Tenth Circuit precedent finding that the Osage reservation was disestablished by Congress. See Osage Nation v. Irby, 597 F.3d 1117, 1127 (10th Cir. 2010) ("the Osage reservation has been disestablished by Congress."). The trial court disagreed as does this Court. McGirt did not expressly overrule Osage Nation, nor is the binding precedent established in Osage Nation incongruent with the Supreme Court's decision in McGirt. Further, the Tenth Circuit's decision in Osage Nation applies here because of its preclusive effect. Appellant's claim is entirely derivative of the Osage Nation's original claim, and as such the claim cannot be relitigated here by Appellant.[5]

 

¶5 For these reasons, we decline to revisit the issue and affirm the vitality of the Tenth Circuit's decision in Osage Nation. See also Chance v. Zinke, 898 F.3d 1025, 1027 (10th Cir. 2018) (reiterating Congress' disestablishment of the Osage Reservation); Murphy v. Royal, 875 F.3d 896, 954 (10th Cir. 2017), aff'd sub nom. Sharp v. Murphy, __U.S.__,140 S. Ct. 2412 (2020) (discussing Osage Nation and reiterating Congress' disestablishment of the Osage Reservation). Appellant's claim that his crime occurred in Indian Country is precluded by the prior precedent established in Osage Nation. Proposition I is denied.

 

2. Courtroom Security Camera

¶6 In his second proposition, Appellant complains that structural error occurred when a portion of the jury's deliberations in this case were recorded by a courtroom security camera and one of the prosecutors briefly observed the live-streaming video as he walked past a security monitor on his way to the restroom. Appellant argues the "surreptitious" recording of jury deliberations is so offensive to the bedrock principle of secrecy in deliberations that the error in recording the jury deliberations necessitates automatic reversal of his conviction and sentence. For the reasons discussed below, we find that jury privacy infringements are not structural but are instead subject to a rebuttable presumption of prejudice--a presumption heavily incumbent on the State to rebut. The State aptly rebutted the presumption of prejudice resulting from the security video at issue here.

A. Factual Background

¶7 Jury deliberations were held in the courtroom and commenced at approximately 7:45 p.m. The jury sent out multiple questions to the trial court, including around 9:35 p.m., 9:40 p.m. and 9:59 p.m., by the trial court's clock. Defense counsel agreed with the manner in which the trial court responded to each of the jury's questions.

¶8 At 10:41 p.m.--roughly three hours into deliberations--defense counsel went on the record to announce that it had "come to [his] attention that there is a video system in the courtroom where people can see the jurors deliberate." Defense counsel asked that the camera be turned off and sought an assurance under oath that the video lacked audio. Matt Clark, an individual presumably involved with the security at the courthouse, advised the court that there was no audio associated with the courtroom's security camera or any of the cameras in the courthouse. Clark further stated that the video camera could not be turned off, but another courthouse employee, Monte Stout, interjected that the camera could indeed be turned off. With this, the trial court directed Stout to turn the security camera off immediately.

¶9 Thereafter, Assistant District Attorney Tara Jack, one of the two trial prosecutors, interposed:

Judge, I just don't want there to be an implication on that record that [defense counsel] thinks that myself or [Assistant District Attorney Brett Mize] was looking at any video, we were not. We were not privy to that. We've been sitting in the victim witness center when we weren't up here in this courtroom. We've gone to the bathroom maybe one time but other than that, we have not witnessed any video into that courtroom, and we've actually stayed very clear of that.

¶10 Though appreciative of Jack's assurances, defense counsel sought an affirmation from each prosecutor that no information from the courtroom security video was imparted to either of them. At this point, ADA Mize interjected:

Judge, . . . Ms. Jack doesn't know this . . .the fourth floor has a restroom. I walked up there. I saw a camera system, I glanced at it for 30 seconds, whatever it was. I looked at it, I'm not going to tell you that I didn't. I didn't gain anything from it. Everybody's spread out, there's pictures there.

[Defense counsel] has gotten every response he wanted to every question that has been asked. Everything he wanted and those responses he got. So there's been no information that I gathered from that. I haven't watched the camera on the first floor. I haven't been down there. I've been sitting in the victim room. There's no audio. There's no problem here.

[Defense counsel]'s asking the security cameras be turned off. There's one in the courtroom. The Court's granting that. He's been assured there's no audio. He's gotten every response to every note that he's wanted so there's no problem there.

¶11 ADA Mize assured the trial court that he only viewed the camera on that one occasion and described what he observed. Mize further assured the trial court that there was nothing he could glean from the video other than the fact that the jurors were "all standing around in different areas and pacing around." ADA Jack advised too that no information from the security video had been imparted to her. Thereafter, the record was closed.

¶12 At 11:26 p.m., the trial court went back on the record, and defense counsel again urged the issue of the courtroom security video and requested a mistrial. Defense counsel asserted that "jurors would resent like hell being videotaped in their deliberations[.]" Defense counsel further argued that the sheer fact that ADA Mize viewed the video suggested the State gained information and thus an advantage when addressing how to respond to jury questions. The trial court denied defense counsel's motion stating:

Motion at this time will be denied based on the fact that the State had the opportunity to be questioned about anything they may have gleaned from a simple video for a matter of seconds. There was an affirmation by both State's counsel that they gleaned nothing from it. It satisfied defense counsel at that time. It was affirmed by [ ] security [personnel] that there [was] no audio and then the video [was] immediately turned off. Your objection will be noted for the record.

¶13 Defense counsel did not relent and challenged whether ADA Mize had actually answered the question of whether "information [was] imparted to [him] based on the recording of the jury?" Mize conclusively stated that he had not spoken to "any deputies about anything," nor was any information conveyed to him "[o]ther than what [he] witnessed with [his] own eyes, which [he had] already talked about[.]" The trial court again denied Appellant's motion for a mistrial, and the record was closed. The jury returned their verdict shortly thereafter at 11:57 p.m. Prior to the completion of Appellant's trial, a protective order to the sheriff was issued by the trial court to preserve the security video of the jury's deliberations.

¶14 On February 10, 2022, Appellant filed a motion for new trial asserting, inter alia, that the mere videotaping of the jury's deliberations constituted reversible error. The trial court took up the motion at sentencing. Defense counsel acknowledged at that time to having not watched the video, nor having subpoenaed it from the sheriff's office for presentation to the court in support of the motion for new trial. ADA Mize again reiterated that the video offered no advantage, noting that "the video [had] zero audio, zero ways to communicate from either side." The State further asserted that the intrusion into the deliberations was de minimis. The trial court agreed finding that the issue had already been addressed at the time of deliberations and it was now an appellate issue. The trial judge ordered the parties to include the video in the record as an exhibit so Appellant's claims in the motion for new trial could be addressed on appeal. The video was placed on a thumb drive and included as an exhibit to the formal sentencing transcript.

B. Analysis

¶15 It is well established that "the deliberations of the jury shall remain private and secret." United States v. Olano, 507 U.S. 725, 737 (1993) (citation and internal quotations marks omitted). "[T]he primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." Id. at 737-38. In keeping with this premise, "it has long been the law [in Oklahoma] that the sanctity of the jury room cannot be invaded." Munn v. State, 1969 OK CR 245, ¶ 5, 459 P.2d 628, 630. See also 22 O.S.2021, § 857 (a jury must be privately sequestered after hearing the charge and retiring to deliberate). The Legislature has reinforced the sacrosanct nature of deliberations by criminalizing knowing and willful intrusions into jury deliberations, such as by recording, listening, or attempting the same while the jury is deliberating. 21 O.S.2021, § 588.[6]

 

¶16 No doubt error occurred in this case both when the jury deliberations were recorded by the courtroom security camera and when the video feed was briefly viewed by one of the prosecutors. These jury privacy infringements, however, do not amount to structural error warranting automatic reversal as Appellant contends on appeal. Although this type of infringement may constitute a criminal offense under 21 O.S.2021, § 588, a violation of Section 588 is not tantamount to a constitutional violation. See Robinson v. State, 2011 OK CR 15, ¶ 4, 255 P.3d 425, 428 (structural error is restricted to a limited class of cases); United States v. Mayes, 606 F. SupP.3d 1127, 1131 (W.D. Okla. 2022) (presence of a security camera that lacked audio in the courtroom where jury deliberations transpired was not inherently prejudicial). Rather, the infringement is purely a violation of a state statutory provision.

 

¶17 The Section 588 infringements that occurred here are comparable to jury tampering and sequestration issues. We have consistently subjected these issues to a rebuttable presumption of prejudice, a burden which rests heavily on the State.[7] We find that the Section 588 infractions that transpired here should be scrutinized in the same manner. Applying that standard, the State amply rebutted the presumption of prejudice caused by the presence of the security camera in the courtroom and the prosecutor's brief viewing of the jury's deliberations via a security monitor.

¶18 The record shows that the mere passive presence of the security camera had no direct impact on juror deliberations in this case. There is no indication in the record that the jury was aware of the camera's presence in the courtroom at the time of their deliberations, and thus its presence could not have "exerted a 'chilling' effect on the [ ] jurors." Olano, 507 U.S. at 739. The State also sufficiently demonstrated that it gained no tactical advantage from the camera's presence in the courtroom or ADA Mize's brief viewing of the camera's video feed. ADA Jack assured the trial court that no information from the security video had been imparted to her. ADA Mize further affirmed on the record that no information had been imparted to him from his viewing of the video nor had any information derived from the video by others been conveyed to him. The video had no audio feed and afforded ADA Mize nothing more than the knowledge that jurors were standing around in different places in the room, that some were gesturing, and that "stuff" was spread out on both counsel tables--the very sort of behavior we expect jurors to engage in while dutifully deliberating. Our review of the security video confirms that it provided no useful knowledge about the deliberations to a viewer, particularly because of the lack of audio.

C. Conclusion

¶19 Given the specific circumstances of this case, we find that the jury intrusions stemming from the courtroom security camera were wholly benign.[8] The State sufficiently rebutted any presumption that the passive presence of the security camera had an impact on the jurors' deliberations or otherwise garnered the State a tactical advantage with the jury. The trial court did not abuse its discretion when it overruled Appellant's request for a mistrial. Tryon v. State, 2018 OK CR 20, ¶ 133, 423 P.3d 617, 653 (whether to grant a mistrial at defense request is left to the trial court's sound discretion); Knighton v. State, 1996 OK CR 2, ¶ 65, 912 P.2d 878, 894 ("A mistrial is an appropriate remedy when an event at trial results in a miscarriage of justice or constitutes an irreparable and substantial violation of an accused's constitutional or statutory right."); Norman v. State, 2023 OK CR 4, ¶ 17, 528 P.3d 1142, 1146 ("An abuse of discretion is a clearly erroneous conclusion and judgment, that is clearly against the logic and effect of the facts presented."). Proposition II is denied.

3 & 4. Juror Separation

¶20 In his third proposition, Appellant complains that the courtroom security video shows a juror having a conversation on his cell phone after being charged with the case, but prior to surrendering his cell phone to the bailiff. Appellant argues that the juror "was talking to some outside party on a cell phone after receiving the charge and during formal jury deliberations[,]" in violation of 22 O.S.2021, § 857.[9]

 

¶21 According to Appellant, a presumption of prejudice attached under Section 857 to the juror's phone conversation and there is nothing on the face of the record to rebut the presumption of prejudice. Because the trial judge "committed fundamental error by allowing a juror to use his cell phone to call an outside party after deliberations had begun," Appellant contends that reversal of his conviction is warranted.

 

¶22 In his fourth proposition, Appellant contends that the courtroom security video also shows the trial judge entered the courtroom with a handful of papers and a coffee mug, during which time he appeared to be talking to some of the jurors, and then he laid a file folder on the table. Before leaving the room, Appellant tells us the video shows the trial judge directly engaged one of the jurors in conversation for a few seconds before making his way off camera.

¶23 Appellant complains that the judge's actions amounted to improper communications with the jury after being charged with the case, in violation of Section 857. Appellant tells us that a presumption of prejudice arises under Section 857 because the judge broke juror sequestration during deliberations and the face of the record does not rebut the presumption of prejudice. Thus, Appellant reasons, his manslaughter conviction must be reversed.

¶24 The State responds by requesting that the case be remanded to the district court for an evidentiary hearing for both propositions.[10] In support of its application for an evidentiary hearing, the State has submitted inter alia affidavits from ten jurors denying any communications with non-jurors about the merits of the case during the trial. The trial judge and bailiff have also signed affidavits denying that improper communications were had with the jurors in this case.

¶25 Appellant's juror separation claims could have been raised in his motion for new trial. See 22 O.S.2021, § 952(3). Neither proposition, however, was presented below. Thus, our review is for plain error only. Johnson, 2004 OK CR 23, ¶ 15, 93 P.3d at 46 (reviewing juror separation claim for plain error where defense counsel failed to object). See Warner v. State, 2006 OK CR 40, ¶ 14, 144 P.3d 838, 858, overruled on other grounds in Taylor v. State, 2018 OK CR 6, 419 P.3d 265 (reviewing juror misconduct claim for plain error where defense counsel at the hearing on the motion for new trial presented no evidence, or even argument, in support of the affidavits attached to said motion).

¶26 "Plain error review requires the defendant to prove: (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding." Washington v. State, 2023 OK CR 22, ¶ 7, 541 P.3d 852, 856. "Even where this showing is made, this Court will correct plain error only where the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings or represented a miscarriage of justice." Id.

¶27 Appellant fails to show actual or obvious error. The record shows that, after the instructions were read and closing arguments were concluded, the trial court allowed the jury to separate for a short break of around ten minutes before beginning their deliberations. The trial court explained this short break would give the jurors an opportunity to stretch their legs and use the restroom while the judge cleared out the courtroom for the jury's use in deliberations. Defense counsel agreed on the record with the trial court's plan to grant the jury a break and registered no objection at any time. Before the record was closed, the trial court dismissed the alternate jurors and swore-in the bailiff.

¶28 The courtroom security video begins where the transcript leaves off. The video's timestamp began at 7:46 p.m.[11] The video initially shows court personnel placing water and snacks for the jurors on the tables in the courtroom while several jurors waited nearby. Other than the snacks and water, the courtroom tables by this point were cleared of items. In the opening portions of the video, the jurors are shown standing and milling about inside the bar of the courtroom.[12] A single juror is sitting in a chair, on the top row of the jury box, and he appears to be talking on his cell phone.

¶29 The trial judge, clad in his robe, appears at the bottom of the screen, holding a red file, a stack of papers and a coffee mug. The trial judge then walked over and placed what appears to be the jury instructions on the counsel table. The video shows the trial judge spoke briefly to the group of jurors and, on his way out of the court room, he spoke momentarily with one of the jurors standing closest to the bench. Roughly one minute after the start of the video, the judge exits at the lower right-hand corner of the screen and does not reappear.

¶30 After the trial judge leaves, the bailiff started collecting the jurors' cell phones. This was consistent with the trial court's admonishment to the jurors, prior to releasing them for the break, that they would not be allowed to keep their cell phones during deliberations. As the bailiff collected the cell phones, the jurors continued to mill about the courtroom. Roughly three minutes into the first video, the juror who was talking on his cell phone handed the bailiff his phone. The bailiff then exited the video with the jurors' phones.

¶31 The video shows the jurors continued eating their snacks and milling about the courtroom. Other jurors can also be seen during the first ten minutes of the video coming and going from the lower right corner of the video. Roughly twelve minutes into the video, the bailiff handed out cups of coffee to some jurors within camera view. A few of the jurors can be seen looking at exhibits. Roughly twenty minutes into the video, all twelve jurors are either seated, or standing, around the counsel tables inside the courtroom. By this point, the jury's deliberations appear to have begun in earnest.

¶32 Under Section 857, the jury may not separate once deliberations have begun. Wackerly v. State, 2000 OK CR 15, ¶ 18, 12 P.3d 1, 10. We have held that, after the case was submitted to them, "if [the jurors] are allowed to separate and commingle with people outside the group, prejudice is presumed." Id. In the present case, the trial court allowed the jury to separate for a short break of approximately ten minutes after being charged with the case but before beginning their deliberations, while court personnel cleared the courtroom. Defense counsel on the record agreed to the break. No objection was made when the jurors were allowed to separate, and no admonishment was requested.

¶33 There was thus no error, plain or otherwise, from the segment of the security video which shows the jurors on a short break, before commencement of their deliberations, while the courtroom was being cleared. This is so even though one of the jurors talked on his cell phone briefly, prior to handing it over to the bailiff. "'[W]hen the court allows the jury to separate and counsel for both sides is present, their failure to object waives any potential error caused by the separation.'" Id. (quoting Elliott v. State, 1988 OK CR 81, ¶ 14, 753 P.2d 920, 922). We have denied relief in the past for claims similar to Appellant's. See Johnson, 2004 OK CR 23, ¶ 15, 93 P.3d at 46 (finding no plain error where the trial court allowed the jury to separate for approximately ten minutes before beginning their deliberations, after being charged with the case, where defense counsel did not object); Wackerly, 2000 OK CR 15, ¶ 19, 12 P.3d at 10 (finding any error waived when neither party's attorney objected to the trial court allowing the jury to separate, and go unattended into the hall or downstairs to smoke, during a ten minute break ordered after the case had been submitted to the jury but before they retired to the jury room for deliberations); Day v. State, 1989 OK CR 83, ¶ 16, 784 P.2d 79, 84 (finding no prejudice to defendant for overnight separation of jury during deliberations where counsel did not object, the trial judge admonished the jury and there was no evidence that jurors did not follow admonishment); Elliott, 1988 OK CR 81, ¶ 15, 753 P.2d at 922-23 (finding any error waived when neither party's attorney objected to the trial court allowing the jury to separate, and go unattended, to the courthouse vending machines during late night deliberations).

¶34 Based on this authority, there was no actual or obvious error from the trial court allowing the jury to separate for a short break before the commencement of deliberations. Any potential error from this separation was waived by counsel. Further, the trial judge had previously admonished the jury throughout the trial not to discuss the case with outside persons or to allow outside persons to talk about the case to them, either in person or by electronic, telephonic or any other means. There is no evidence that the jurors in this case violated this admonishment.

¶35 To the extent that Appellant challenges the trial judge's comments to the jurors when he is shown on the video, there was also no error. "Not every communication between the court and jury outside the presence of counsel is prohibited. Communications with the jury regarding simple housekeeping matters do not give rise to a statutory violation." Warner, 2006 OK CR 40, ¶ 107, 144 P.3d at 875-76. See Perry v. State, 1995 OK CR 20, ¶ 26, 893 P.2d 521, 528 (same).

¶36 Even without the audio, the courtroom security video--when considered with the rest of the record--refutes the notion of improper communications between the judge and jurors. At most, the video shows the judge was communicating with the jury about simple housekeeping matters prior to the commencement of deliberations. The video shows that the judge's communications with the jurors were made in passing, lasted a few seconds and occurred while he was clearing out of the courtroom prior to the commencement of deliberations. Defense counsel was aware the courtroom would be cleared for the jurors' deliberations based on the judge's comments on the record while the jurors took their break and yet, counsel registered no objection. The face of the record here shows no prejudice to Appellant from juror communications with non-jurors after being charged with the case, but prior to commencing deliberations. See Wilson v. State, 1975 OK CR 71, ¶ 5, 534 P.2d 1325, 1237 (the presumption of prejudice from unauthorized communications between the judge and jury during deliberations "may be overcome if, on appeal, this Court is convinced that on the face of the record no prejudice to the defendant occurred.").

¶37 There was thus no actual or obvious error from the trial court's brief communications with the jurors during the break, prior to the commencement of the jury's deliberations. We find that any potential error from the juror separation in this regard that occurred during the break was waived by counsel. We observe too there is no evidence that the jurors in this case discussed the merits of the case with the judge. Propositions III and IV are denied.

¶38 Accordingly, the State's application for an evidentiary hearing on Appellant's juror separation claims pursuant to Rule 3.11(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024), is DENIED. The State's motion to file the application for evidentiary hearing under seal is GRANTED IN PART AND DENIED IN PART. The Clerk of this Court is DIRECTED to file and maintain under seal the original application for evidentiary hearing, and accompanying exhibits, previously tendered for filing by the State in this case. See Rule 2.7(F), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024) (procedures for maintaining sealed court records).

¶39 IT IS FURTHER ORDERED that the Attorney General shall file with the Clerk of this Court redacted substitute copies of the application for evidentiary hearing suitable for public filing that redact out all juror names and identifiers from the application and accompanying exhibits. See 38 O.S.2021, § 36(B); 51 O.S.2021, § 24A.30; Rules 2.6(E)(1)(b) and 2.7(E), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024). The State shall complete this task within ten (10) days of the date of this opinion being filed. Upon the filing by the State of the substitute redacted copies, the Clerk of this Court shall return to the Attorney General any unredacted copies of the application for evidentiary hearing still in its possession.

DECISION

¶40 The Judgment and Sentence of the District Court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2024), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM
THE DISTRICT COURT OF OSAGE COUNTY
THE HONORABLE BURL O. ESTES
ASSOCIATE DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 T. RICHARD O'CARROLL
 ATTORNEY AT LAW
 2171 N. VANCOUVER
 TULSA, OK 74129
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 C. ARMOR
 OKLA. INDIGENT
 DEFENSE SYSTEM
 111 N. PETERS AVE.
 SUITE 100
 NORMAN, OK 73069
 COUNSEL FOR APPELLANT
 
 
 
 
 BRETT MIZE
 TARA K. JACK
 ASST. DISTRICT ATTORNEYS
 OSAGE COUNTY
 628 ½ KIHEKAH, 3RD FLOOR
 PAWHUSKA, OK 74056

 COUNSEL FOR THE STATE
 
 
 GENTNER F. DRUMMOND
 OKLA. ATTORNEY GENERAL
 JOSHUA R. FANELLI
 CAROLINE E.J. HUNT
 ASST. ATTORNEYS GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE

 EUGENE BERTMAN
 TALLEY, TURNER, STICE,
 & BERTMAN, P.C.
 219 EAST MAIN STREET
 NORMAN, OK 73069
 AMICUS CURIAE
 FOR OSAGE NATION

 CLINT PATTERSON
 ATTORNEY GENERAL
 OFFICE OF THE ATTORNEY
 GENERAL
 OSAGE NATION
 1071 GRANDVIEW LANE
 PAWHUSKA, OK 74056
 AMICUS CURIAE
 FOR OSAGE NATION

 R. BROWN WALLACE
 219 EAST MAIN STREET
 NORMAN, OK 73069
 AMICUS CURIAE
 FOR OSAGE NATION
 
 
 

 

OPINION BY: HUDSON, J.
ROWLAND, P.J.: SPECIALLY CONCUR
MUSSEMAN, V.P.J.: CONCUR
LUMPKIN, J.: SPECIALLY CONCUR
LEWIS, J.: SPECIALLY CONCUR

FOOTNOTES

[1] The jury acquitted Appellant of Murder in the Second Degree, the alternative charge in this case, and convicted him of the lesser crime of Manslaughter in the First Degree.

[2] The Osage Nation's motion to file an amicus curiae brief is GRANTED. The Clerk of this Court is ORDERED to file the brief and accompanying appendix tendered on May 11, 2023.

[3] Ms. McCauley's legal name was Soncherie Boudreaux, but she referred to herself as "Carley McCauley." Ms. McCauley and Appellant married after the events in this case, and she formally changed her name.

[4] Notably, Appellant's trial commenced on October 4, 2021, almost 15 months after the the United States Supreme Court's decision in McGirt v. Oklahoma, 591 U.S. __, 140 S. Ct. 2452 (2020) on July 9, 2020.

[5] See Parker v. State, 2021 OK CR 17, ¶ 37 n.14, 495 P.3d 653, 666 n.14 (noting that the potential for a jurisdictional gap is "sufficiently addressed by making sure the test for Indian status used by this Court mirrors that used by the federal courts"); Davis v. State, 2011 OK CR 29, ¶ 119, 268 P.3d 86, 119 (recognizing that this Court will follow the guidance of the Tenth Circuit until the United States Supreme Court rules on the applicability of a legal principle to Oklahoma); Miller v. Miller, 1998 OK 24, ¶ 23, 956 P.2d 887, 896 ("[A] final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided . . . in that action."); Dearing v. State ex rel. Comm'rs of Land Off., 1991 OK 6, ¶ 7, 808 P.2d 661, 664 ("The doctrine of res judicata is that a final judgment of a court of competent jurisdiction upon a matter properly before it concludes the matter as to the parties to the litigation and their privies and constitutes a bar to a new action upon the same cause of action, either before the same or any other tribunal." (emphasis added)); Taylor v Stargell, 553 U.S. 880, 893-95 (2008) (identifying general categories in which privity may exist between a party and a nonparty); cf., e.g., Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson, 874 F.2d 709, 713 (10th Cir. 1989) (recognizing the "presumption and the reality" that "federal law, federal policy, and federal authority are paramount in the conduct of Indian affairs in Indian Country.").

[6] Title 21, Section 588 specifically provides:

If any person, firm or corporation shall knowingly and willfully, by means of any device whatsoever, records or attempts to record the proceedings of any grand or petit jury in any court of the State of Oklahoma while such jury is deliberating or voting or listens to or observes, or attempts to listen to or observe, the proceedings of any grand or petit jury of which he is not a member in any court of the State of Oklahoma while such jury is deliberating or voting shall be guilty of a felony[.]

21 O.S.2021, § 588 (emphasis added).

[7] Frazier v. State, 2020 OK CR 7, ¶ 4, 470 P.3d 296, 300-01 (break in sequestration in violation of 22 O.S.2011, § 857 resulted in a presumption of prejudice with the State bearing the burden to prove the break in sequestration did not prejudice the defendant); J.M.F. v. State, 2018 OK CR 29, ¶ 5, 427 P.3d 154, 155 ("When a violation of [22 O.S.2011, § 857] occurs over defense objection, as occurred in this case, prejudice is presumed and the burden falls to the State to prove there was no harm done."); Johnson v. State, 2004 OK CR 23, ¶ 20, 93 P.3d 41, 47 ("Section 857 is an important statutory provision designed to preserve inviolate the right to, and the purity of jury trials, and we continue to find its language to be mandatory. Thus, when a violation of this statute occurs over defense objection prejudice is presumed and the burden falls to the State to prove otherwise." (internal quotations and citations omitted)); Wacoche v. State, 1982 OK CR 55, ¶ 14, 644 P.2d 568, 572 ("When the alleged misconduct occurs subsequent to the submission of the case to the jury, the misconduct is presumed to have prejudiced the defendant and it is incumbent upon the State to show that he was not prejudiced."); see also Remmer v. United States, 347 U.S. 227, 229 (1954) ("any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . presumptively prejudicial," and "the burden rests heavily upon the Government to establish" the contact was harmless to the defendant.).

[8] While the Section 588 violations were harmless in this case, trial judges should be mindful of the location of security cameras in their respective courthouses, and if feasible, take appropriate measures to ensure that cameras are disabled when present in a location that a jury is actively deliberating. If a camera is in the area in which jury deliberations are to be held, a pre- and post-verdict record should be made outlining the measures taken, such as shutting off or disabling the camera, to avoid the type of issues that arose in this case.

[9] Section 857 states:

After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court.

[10] See Application for Evidentiary Hearing Pursuant to Rule 3.11(A) Regarding Break in Jury Sequestration with Exhibits, tendered for filing under seal on April 21, 2023.

[11] This is consistent with the time shown at the beginning of the video on a clock located on the courtroom wall and a court minute in the record indicating that closing arguments concluded at 7:45 p.m.

[12] The jurors are easily identifiable in the video from their red juror badges.

 

 

ROWLAND, P.J. SPECIALLY CONCURRING:

¶1 I concur in the resolution of this case in all respects. I would, however, go further and address McCauley's contention in Proposition 1 that Osage Nation v. Irby, 597 F.3d 1117 (10th Cir. 2010) is no longer good law that this Court should follow. In finding that the Osage Reservation was disestablished by Congress, the United States Court of Appeals for the Tenth Circuit relied upon Solem v. Bartlett, 465 U.S. 463 (1984). McCauley claims that McGirt v. Oklahoma, 140 S. Ct. 2452 (2020) "deprecated" or at least clarified that test to the degree that Osage Nation should no longer be relied upon. To be sure, the McGirt majority departed from its usual application of the Solem framework, as pointed out by the four dissenting justices. McGirt, 140 S. Ct. at 2485-86 (Roberts, C.J. dissenting). Nevertheless, the majority opinion mentions or cites approvingly the Solem case about a dozen times, and nowhere indicates its abrogation, deprecation or overruling.

¶2 McCauley reminds us that this Court is not bound by the Tenth Circuit case, and that we have an independent duty and authority to interpret the law. Brown v. State, 1997 OK CR 1, ¶ 24, 933 P.2d 316, 323-24. It is often prudent, however, to follow guidance from the federal appellate courts in the absence of binding Supreme Court precedent. Davis v. State, 2011 OK CR 29, ¶ 119, 268 P.3d 86, 119, as corrected (Feb. 7, 2012). In this case, it is not only prudent, but also essential to follow Osage Nation unless and until it is overruled by a federal court with authority to reinstate federal jurisdiction, lest there be a jurisdictional gap over this piece of Oklahoma. See Roth v. State, 2021 OK CR 27, ¶ 2, 499 P.3d 23, 28-29 (Rowland, V.P.J. dissenting);[1] Goforth v. State, 1982 OK CR 48, ¶ 9, 644 P.2d 114, 116-17. Federal prosecutors are certainly bound by the Tenth Circuit precedent and currently have no jurisdiction over the land which was formerly the Osage Reservation. Were this Court to grant the relief McCauley seeks and find as a matter of state law that there is currently an Osage Reservation, it would divest state authorities of criminal jurisdiction. Because the crime at issue here is covered by the Major Crimes Act, the tribe would also be without criminal jurisdiction. 18 U.S.C. § 1153(a). The result is that no sovereign authority would have criminal jurisdiction over this land.

¶3 In sum, if McCauley is correct that McGirt does such violence to the Solem analysis that cases such as Osage Nation should no longer be followed, that pronouncement must come from the federal courts. Because it was in that venue that the current law regarding the status of the Osage Reservation was decided, that is the only venue where departing from the prior ruling could bestow criminal jurisdiction back upon federal authorities.

¶4 I am authorized to state that Judge Lumpkin joins in this writing.

FOOTNOTES

[1] The United States Supreme Court granted certiorari and vacated the Court's decision in Roth. Oklahoma v. Roth, 142 S. Ct. 2896 (2022).

 

 

LEWIS, JUDGE, SPECIALLY CONCUR:

¶1 I concur in the Court's conclusion that the recording and brief observation of a live video feed of jury deliberations by a prosecutor in this case did not prejudice the defendant and does not require reversal.

¶2 As the opinion and section 588 of Title 21 make clear, the knowing attempt to either record the proceedings of a jury or to listen to or observe its proceedings violates the sanctity of deliberations and is punishable as a felony.

¶3 Counsel are charged with knowledge that such invasions of the jury's proceedings are irregular and, as officers of the court, they have a professional obligation to immediately bring such matters to the attention of the presiding judge.

¶4 The presence of security cameras in courtrooms that may be used for jury deliberations will require ongoing vigilance by judges and counsel to ensure that video and audio devices are disabled before a jury uses the room in any manner protected by section 588.

 

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1988 OK CR 81, 753 P.2d 920, 
ELLIOTT v. STATE
Discussed at Length

 
1989 OK CR 83, 784 P.2d 79, 
DAY v. STATE
Discussed

 
1995 OK CR 20, 893 P.2d 521, 
PERRY v. STATE
Discussed

 
1996 OK CR 2, 912 P.2d 878, 
KNIGHTON v. STATE
Discussed

 
2004 OK CR 23, 93 P.3d 41, 
JOHNSON v. STATE OF OKLAHOMA
Discussed at Length

 
2006 OK CR 40, 144 P.3d 838, 
WARNER v. STATE
Discussed at Length

 
1975 OK CR 71, 534 P.2d 1325, 
WILSON v. STATE
Discussed

 
2011 OK CR 15, 255 P.3d 425, 
ROBINSON v. STATE
Discussed

 
2011 OK CR 29, 268 P.3d 86, 
DAVIS v. STATE
Discussed at Length

 
2018 OK CR 6, 419 P.3d 265, 
TAYLOR v. STATE
Discussed

 
2018 OK CR 20, 423 P.3d 617, 
TRYON v. STATE
Discussed

 
2018 OK CR 29, 427 P.3d 154, 
J.M.F. v. STATE
Discussed

 
2020 OK CR 7, 470 P.3d 296, 
FRAZIER v. STATE
Discussed

 
2021 OK CR 17, 495 P.3d 653, 
PARKER v. STATE
Discussed

 
2021 OK CR 27, 499 P.3d 23, 
ROTH v. STATE
Discussed

 
2023 OK CR 4, 528 P.3d 1142, 
NORMAN v. STATE
Discussed

 
2023 OK CR 22, 
WASHINGTON v. STATE
Cited

 
1982 OK CR 48, 644 P.2d 114, 
GOFORTH v. STATE
Discussed

 
1982 OK CR 55, 644 P.2d 568, 
WACOCHE v. STATE
Discussed

 
1969 OK CR 245, 459 P.2d 628, 
MUNN v. STATE
Discussed

 
1997 OK CR 1, 933 P.2d 316, 
Brown v. State
Discussed

 
2000 OK CR 15, 12 P.3d 1, 71 OBJ 2132, 
Wackerly v. State
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1991 OK 6, 808 P.2d 661, 62 OBJ 435, 
Dearing v. State ex rel. Com'rs of Land Office
Discussed

 
1998 OK 24, 956 P.2d 887, 69 OBJ 1172, 
MILLER v. MILLER
Discussed

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 588, 
Grand or Petit Juries - Recording of or Listening to Proceedings - Penalty
Discussed at Length

 
21 O.S. 711, 
First Degree Manslaughter
Cited

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 857, 
Jury Decides After Charge - In Court - Retirement for Deliberation - Determination of Sentence
Discussed at Length

 
22 O.S. 952, 
Grounds for Granting New Trial
Cited

Title 38. Jurors

 
Cite
Name
Level

 
38 O.S. 36, 
Disclosure of Personal Information about Jurors - Jury List - Duty to Protect Juror Information
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 24A.30, 
Court Records - Authority of the Court to Seal a Record
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA